UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA


IN RE:                    CASE NO.: 11-19484-BKC-AJC

TRANSBRASIL S.A. LINHAS
AEREAS,
          Debtor.
_____/



MOTION TO DISMISS CASE, IN ADDITION TO MOTION TO
UNSEAL DISCOVERY PROCEEDINGS FILED BY DEBTOR
TRANSBRASIL S.A. LINHAS AEREAS (44)



February 26, 2014



          The  above-entitled  cause  came  on  for

hearing  before  the  HONORABLE A.  JAY  CRISTOL, one

of  the  judges  of  the  UNITED  STATES  BANKRUPTCY

COURT, in and for the  SOUTHERN  DISTRICT OF FLORIDA,

at  51  Southwest  1st  Avenue,  Miami,  Dade County,

Florida  on January 26, 2014, commencing  at or about

11:00 a.m., and the  following  proceedings were had:



          Reported By:  Bonnie Tannenbaum

Page 2

```
 1                    APPEARANCES:

 2

      ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A., by
 3                EDWARD DAVIS, ESQUIRE
             GREGORY S. GROSSMAN, ESQUIRE
 4              On behalf of the Trustees

 5

 6
             WEISSMAN & DERVISHI, P.A., by
 7            BRIAN S. DERVISHI, ESQUIRE
             PETER A. TAPPERT, ESQUIRE
 8                      and
             IRELAND STAPLETON, by
 9            MARK E. HAYNES, ESQUIRE
            STEVEN C. BACHAR, ESQUIRE
10    On behalf of Marigrove Incorporated, Cave Creek
       Holdings Corporation and Cel-Air, Incorporated
11

12

13      SCHUCHAT INTERNATIONAL LAW FIRM, LLC, by
         FRANK SCHUCHAT, ESQUIRE (Via Telephone)
14                      and
              BAST AMRON, LLP, by
15           MORGAN B. EDELBOIM, ESQUIRE
      On behalf of the Estate of Carlos Fontana Transbrasil
16

17                  ALSO PRESENT:

18               ALFREDO KUGELMAS
                 GUSTAVO SAUER
19               _ _ _ _ _ _

20

21

22

23

24

25
```

1           THE COURT:  All right.  We're now at 11:00

2    on the matter of Transbrasil S.A. Linhas Aereas, and

3    Mr. Frank Schuchat wishes to join us by telephone

4    from --

5           UNIDENTIFIED:  Judge, we're still waiting

6    for Mr. Grossman.

7           THE COURT:  Oh, he's not here yet?

8           UNIDENTIFIED:  He's not here yet, Your

9    Honor.

10          THE COURT:  Oh, okay.

11          It appears Mr. Grossman has entered the

12   premises, and we'll get this gentlemen on the line.

13          (Thereupon, Judge Cristol contacted

14   Mr. Schuchat via telephone.)

15          MR. SCHUCHAT:  Hello.

16          THE COURT:  Hello, this is Judge Cristol

17   calling Frank Schuchat.

18          MR. SCHUCHAT:  Hello, Judge Cristol.  Good

19   morning.

20          THE COURT:  Good morning.

21          MR. SCHUCHAT:  This is Frank Schuchat.

22          THE COURT:  We're on the matter of

23   Transbrasil S.A. Linhas Aereas, please state your

24   appearance, Mr. Schuchat.

25          MR. SCHUCHAT:  Mine is Frank Schuchat of

```
 1    the law firm of Schuchat International Law Firm on
 2    behalf of the estate of Carlos Fontana Transbrasil.
 3              THE COURT:  Very well.
 4              And in the courtroom, it looks like an
 5    unfair fight, we've got five to one, here.
 6              MR. GROSSMAN:  A lot of people are getting
 7    through the metal detector.
 8              THE COURT:  Okay.  Well, state your
 9    appearances.
10              MR. EDELBOIM:  Good morning, Your Honor.
11    Morgan Edelboim of the law firm of Bast Amron on
12    behalf of Transbrasil acting through its majority
13    Shareholder, the Fontana Estate.
14              THE COURT:  And so that's the same person
15    that is represented by Mr. Schuchat?
16              MR. EDELBOIM:  That is correct, Your Honor.
17              THE COURT:  Okay.  Where is 303?
18              MR. EDELBOIM:  303 is a Denver number.
19              THE COURT:  Oh, okay.  It's what, 9:00 in
20    the morning there?
21              MR. SCHUCHAT:  It's 9:00 in the morning,
22    yes, sir.
23              THE COURT:  Oh, okay.
24              Any further appearances?
25              MR. HAYNES:  Good morning, Your Honor.
```

1    Mark Haynes of the Denver law firm of Ireland

2    Stapleton, along with my partner.

3              THE COURT:  Very well.

4              MR. DERVISHI:  Good morning, Your Honor.

5    Brian Dervishi for Marigrove, Cave Creek and Cel-Air

6    with Peter Tappert from Weissman & Dervishi.

7              THE COURT:  Very well.

8              MR. GROSSMAN:  Good morning, Your Honor.  I

9    am Greg Grossman of Astigarraga Davis Mullins &

10   Grossman on behalf of the trustees.  The trustees are

11   not present in the courtroom, but I expect them

12   shortly.  I think they're having trouble with the

13   metal detectors and getting through that, along with

14   my partner will be joining us shortly.

15             THE COURT:  Oh, here comes someone else --

16   no, maybe not.

17             Okay.  Well, where are we?  Can we proceed,

18   or do we have to wait for them?

19             MR. GROSSMAN:  We can proceed now.

20             MR. EDELBOIM:  Good morning, Your Honor.

21   You have, I think, several matters on the calendar

22   this morning.

23             THE COURT:  I only show one, Court Paper

24   44, a motion to dismiss, anything else?

25             MR. EDELBOIM:  I believe that there's

1    another hearing that is also on the calendar,

2    everything has been under seal, so it may be

3    confusing from the docket to see what exactly is on

4    the Court's docket.

5           THE COURT:  Well, whatever we have to deal

6    with, we'll give it a try.

7           MR. EDELBOIM:  On Court Paper 44, there

8    were two matters, there was a motion to dismiss and a

9    motion to unseal.  For the motion to dismiss, Your

10   Honor, we filed our papers in December, two months

11   ago, and our motion has been of record for that

12   period of time.  We received a response last week

13   that was 33 pages in length, and provided an

14   affidavit that was by the trustee, and yesterday we

15   received documents allegedly supporting the notion

16   that there are assets within the United States as of

17   the filing of the petition.  We have not had adequate

18   time to review the documents that have been provided

19   to us, and we ask that the Court continue just the

20   motion to dismiss portion of this hearing for a two

21   to three week period of time.

22           THE COURT:  Does anyone have any objection

23   to that procedure?

24           MR. GROSSMAN:  Yes, Your Honor.  Greg

25   Grossman for the trustees.  Your Honor, at the filing

1   of this case, the trustees represented in their

2   verified petition their belief of the existence of

3   two engines at General Electric.  We filed our

4   response, and it's in the court file, as well, Your

5   Honor.

6            We have two points with respect to the

7   motion to dismiss, one is a factual argument, and one

8   is a legal argument.  We don't think factually there

9   is a debate, even in this request for a continuance.

10            THE COURT:  When you say two engines, I

11   trust you're talking about two aircraft engines?

12            MR. GROSSMAN:  We thought we had -- we had

13   indications that Delta had two aircraft engines and

14   it --

15            THE COURT:  What kind of engines; do you

16   know?

17            MR. GROSSMAN:  We don't know, and it turned

18   out to be that the information was faulty, there were

19   no engines, however --

20            THE COURT:  But Delta is ready when you

21   are.

22            MR. GROSSMAN:  I don't know, maybe they had

23   them and they no longer have them, but we were able

24   to source from the information that we were gathering

25   that there is, in fact, aircraft parts in Kansas, and

1    we provided to opposing counsel basically the

2    letter --

3            THE COURT:  Does Dorothy have to make an

4    appearance in this case?

5            MR. GROSSMAN:  So, there are aircraft parts

6    in Kansas and as well as is typically done in

7    bankruptcy cases, you look -- we also looked in the

8    unclaimed property registries, and we found that lo

9    and behold Transbrasil has residual monies in bank

10   accounts, several bank accounts, here in the states,

11   and we provided that, that's a public document, they

12   can access the Internet and see exactly what we saw.

13   We are making arrangements with respect to the

14   aircraft parts in Kansas and, of course, we're going

15   to make our claim to the unclaimed property.

16           That's on the factual side, so we don't see

17   any reason to have a continuance of a motion to

18   dismiss.  And, by the way, Judge, this issue comes

19   from that Second Circuit Drawbridge case, which has

20   been resoundly criticized the moment that it came

21   out, and we put in our papers, legally, even if we

22   had not a single asset in the United States, we think

23   Drawbridge was decided incorrectly, we believe it is

24   contrary to what the 11th Circuit held under the old

25   304 in the In Re: George case, and therefore,

1    legally, even if we didn't have an asset, it would

2    still be wrong, and this Court would still have the

3    ability to maintain a Chapter 15 case.

4              That's our position, we don't see any

5    reason that time is going to make this any better.

6              THE COURT:  Who else wishes to be heard?

7              MR. HAYNES:  Mark Haynes, Your Honor.  Your

8    Honor, what we know is that when this Chapter 15 was

9    filed, the Court was told there were two aircraft

10   engines in the United States owned by Transbrasil,

11   held by Delta Air Lines.  Apparently, a deposition --

12             THE COURT:  He probably wasn't told

13   anything, it was sealed.

14             MR. HAYNES:  That's right, Your Honor.  And

15   we know that wasn't, in fact, the case.  Yesterday,

16   we were sent an e-mail with a document in Portuguese

17   that we have not been able to get a translation of

18   alleging --

19             THE COURT:  Mr. Grossman can translate that

20   for you right now.

21             MR. HAYNES:  But there are aircraft parts

22   in Kansas, which sounds very strange, but we want to

23   get that document translated.  It was not provided in

24   the form of an affidavit or declaration, there's no

25   competent evidence to present the Court.  We were

1  given a website print from -- I think the assistant

2  treasurer that there may be some refunds due

3  Transbrasil, but there are no dollar amounts, and

4  obviously that's hearsay to begin with and, again,

5  there was no declaration or affidavit provided.

6        There is a complex issue, frankly, to argue

7  to the Court, a novel issue, which is whether the

8  Drawbridge case is good law, and I would say that

9  after the 11th Circuit case cited by Mr. Grossman was

10  decided, several years after it was decided, Congress

11  amended the statute to repeal 304, add Chapter 15,

12  make other modifications to the Code which we think

13  supersedes that case, but if there are no assets

14  here, there's really no reason to get involved in the

15  debate whether Drawbridge is good law or bad law.

16        So we think what makes the most sense for

17  the Court's time and our time is to have the document

18  translated, see what it is that Mr. Grossman came up

19  with yesterday, and talk to him and see whether this

20  is a live issue still, or not, rather than take an

21  hour to argue, frankly, an interesting but complex

22  issue of law.

23        THE COURT:  Any concept of what these parts

24  are or --

25        MR. HAYNES:  One dealer --

1      THE COURT:  You know, aircraft parts can be

2  worth $50,000 for a package the size of a baseball,

3  and they can be worth nothing for a warehouse full of

4  parts if they don't have the proper tags on them.

5      MR. HAYNES:  You know, one word I

6  recognized on the list was hexagonal, and what I see

7  from the word hexagonal in a hardware store, it's a

8  nut that big.

9      THE COURT:  Well, as I say, I've seen a bag

10  of nuts worth $50,000 that just fit into the palm of

11  your hand, but you don't know whether they are tagged

12  or untagged, that's the key.

13      MR. HAYNES:  We do not.

14      THE COURT:  Well, I guess what we have to

15  do is get some more information and --

16      MR. HAYNES:  Yes, Your Honor.

17      MR. GROSSMAN:  Your Honor --

18      THE COURT:  How much time do you think it's

19  going to take you to do that?

20      MR. GROSSMAN:  Your Honor, why don't we

21  have counsel show you the document, because --

22      MR. EDELBOIM:  Your Honor, I would object

23  to that, I think that -- this is not set as an

24  evidentiary hearing, it's probably hearsay.

25      THE COURT:  Well, I mean --

```
 1              MR. GROSSMAN:  The trustee has already
 2    filed a declaration saying, I am aware of these
 3    parts.  These folks then called my office and said,
 4    essentially, maybe he's lying.
 5              THE COURT:  Maybe he is.
 6              MR. GROSSMAN:  And therefore we want the
 7    backup document to show the parts.  Remember, we have
 8    a sealed proceeding in Brazil, we have a sealed
 9    proceeding here.  It took me a day to get permission
10    to give them the document, they now have the
11    document.
12              THE COURT:  Okay.  So, now, what are you
13    suggesting we do?
14              MR. GROSSMAN:  I think it's very simple,
15    are they really contesting that these parts don't
16    exist in Kansas?
17              THE COURT:  Well, we don't know, we'll need
18    to find that out, but it seems to me that as long as
19    there's some controversy, it's premature to dismiss
20    the case until we know that there's nothing left to
21    do with it.  Are you suggesting we should dismiss it?
22              MR. GROSSMAN:  No, I'm suggesting the
23    motion should be denied, Judge, but --
24              THE COURT:  Oh, okay.
25              MR. GROSSMAN:  -- if you want to defer on
```

1   that and come back and --

2           THE COURT:  But, I mean, you know, if

3   there's no dispute, and you can all agree, we can

4   send in an agreed order dismissing but -- well, now

5   that I'm learning a little bit more about this, so

6   this company is an airline?

7           MR. HAYNES:  It was an airline, Your Honor,

8   it went out of business 12 years ago.

9           THE COURT:  Only 12 years ago?

10          MR. HAYNES:  Yes.

11          THE COURT:  Uh-huh.

12          MR. HAYNES:  And it's been in bankruptcy in

13  Brazil ever since.

14          THE COURT:  I see.

15          MR. HAYNES:  Then this Chapter 15 was filed

16  a couple of years ago here saying, we think we have

17  aircraft engines in the U.S. we need to deal with.

18          THE COURT:  They must be old and rusty

19  after 12 years.

20          MR. HAYNES:  I would think so, Your Honor.

21          THE COURT:  But --

22          MR. HAYNES:  That turned out not to be the

23  case.  We asked for documentation about these

24  aircraft parts in Kansas, where obviously Transbrasil

25  never operated.  I expected to --

```
 1          THE COURT:  Well, you never know.
 2          MR. HAYNES:  I expected to see something in
 3  English from the Kansas maintenance company, and
 4  instead we get a letter in Portuguese from a lawyer
 5  in Sao Paulo that we can't read, so --
 6          THE COURT:  Well, I guess we'll have to get
 7  it read, but -- I know Brazil is running an airline,
 8  I think it's called Gol or Gole (phonetic), it is a
 9  very successful copycat of Southwest Airlines,
10  they're running 737s, but that's about -- it had
11  nothing to do with this airline, but I think what we
12  need to do is determine whether or not there's
13  potentially some assets here, so we won't -- we'll
14  hold off on the motion and allow the parties, what,
15  seven days, is that enough time to determine whether
16  you can either send in an agreed order dismissing, or
17  denying the motion to dismiss if there's still a
18  dispute?  What else can we do?
19          MR. HAYNES:  Your Honor, because of the
20  travel involved, can we request 10 days?
21          THE COURT:  Sure, you can have 14 days.
22          MR. HAYNES:  All right.
23          THE COURT:  And, basically, there's no
24  reason to travel, I mean, we can do this by
25  telephone, it works, here's this gentleman on the
```

1    phone right now.  So, as I said, if you come to a --

2    if you all are on the same page and you want to send

3    in an agreed order doing one or the other, bless you,

4    and if not, we can reschedule the hearing and see

5    what the basis is for keeping this thing going.

6            MR. HAYNES:  The matter we would like to

7    take up today, and I don't have a docket number

8    because we filed it under seal --

9            THE COURT:  Oh?

10           MR. HAYNES:  -- is a motion to unseal.

11           THE COURT:  Didn't we do that?  I thought

12   you did that already.  Okay.  Well, that's not a

13   problem?  Does anyone have any objection to

14   unsealing, I understand it's no longer a secret?

15           MR. GROSSMAN:  That's not true, Your Honor,

16   we do object.

17           THE COURT:  Oh, you do, why?

18           MR. GROSSMAN:  It's the other case you may

19   be thinking about.  We have a -- there's another

20   Brazilian case.

21           THE COURT:  Oh, okay, then, my mistake,

22   that's the one, I guess, we unsealed, so this is

23   still sealed, so why should it remain sealed?

24           MR. GROSSMAN:  Thank you, Your Honor.  Greg

25   Grossman on behalf of the trustees.  Your Honor,

1   the -- and I apologize, I wasn't able to do this, the

2   trustees from Brazil are here, Dr. Kugelmas and

3   Dr. Sauer are here, along with my partner in this

4   case.

5            Your Honor, as you were told, this debtor

6   was one of the largest airlines in Brazil at the time

7   it failed.  There was $500,000,000 in claims at the

8   filing --

9            THE COURT:  Wasn't Zurich their largest

10  airline?

11           MR. GROSSMAN:  The largest -- this was one

12  of the largest, this was either two or perhaps three,

13  not that Zarich didn't have its own financial

14  difficulties, because it did, but the -- at the time

15  of the Chapter 15, the debt -- the trustees were able

16  to have -- got access to $8 million, so there is a

17  $492,000,000 hole, and this is all in the declaration

18  filed by the trustees, and they're here.

19           At the time of the bankruptcy -- at the

20  time of their appointment, none of the records of the

21  debtor could be found.  We cited the Brazilian

22  statute that required the debtor to describe where

23  all the assets are.  They said to two different

24  courts two different things about where the records

25  were, it turned out to be that the records that were

1   able to be recovered at this point were ticket

2   information and some minimal documents.  But we're

3   talking about a large operating entity, and at this

4   point, we don't have a general ledger, we don't have

5   the bank account statements, we don't have, you know,

6   any of the audit requests, we have essentially

7   nothing that you would use -- and that's the point of

8   the Brazilian statute that requires the debtor to

9   stand in --

10         THE COURT:  Was there a Brazilian statute?

11   I thought that they didn't have statutes in Brazil, I

12   thought they only had laws which were non codified.

13         MR. GROSSMAN:  No, I believe it's a

14   statute, an actual statute.  The upshot of it, Judge,

15   is that the trustees had to, after doing an

16   investigation, figure out, A, where the books and

17   records are; and, B, what happened to all the money,

18   as it was a substantial company at the time, and they

19   have been unable to get cooperation, as required by

20   law there.

21         In Brazil, they petitioned the Court for an

22   order allowing them to undertake the investigation,

23   and to do so under seal.  The initial trial judge

24   denied the request, it was overturned on appeal, and

25   the Appellate Court said it must -- we agree, and it

1    should be done under seal.

2          Additional requests for investigation were

3    also made to the Brazilian Court, and then the

4    Appellate Court ruled that that investigation, that

5    further investigation, should also be done under

6    seal.

7          When we filed this Chapter 15 case, we

8    requested Your Honor to allow us to issue subpoenas

9    to third parties in furtherance of the investigations

10   authorized by the Brazilian courts under seal.  Your

11   Honor granted that motion, and we have proceeded to

12   issue those subpoenas.  The only reason we're here

13   today is that one of the targets of the subpoena,

14   Redwood, who I don't think is here in the courtroom,

15   violated your order.

16         THE COURT:  Who is Redwood?

17         MR. GROSSMAN:  Redwood is the subpoena

18   target, a person who received the subpoena.

19         THE COURT:  A person or a --

20         MR. GROSSMAN:  It's a corporation.

21         THE COURT:  Oh, okay, I was going to say, I

22   thought maybe it was a Native American.

23         MR. GROSSMAN:  Your Honor, I want to go

24   back and say one thing, though, what's interesting

25   about this is that these folks, at least a couple of

1   counsel's clients here, were actually participants in

2   the appeal in Brazil on the sealing issue, and they

3   lost.  So this issue had already been -- this has

4   already been ventilated before the Brazilian court,

5   and the Brazilian court said the investigation should

6   be under seal.

7          Then we came to this Court and asked for

8   the comity, if you will, to the Brazilian court's

9   request for sealing, that we could undertake our

10  investigation under seal.  We issued the subpoena to

11  Redwood, they violated your order.  That probably

12  becomes subject to a further motion by us --

13          THE COURT:  How did they violate the order?

14          MR. GROSSMAN:  The order says, you shall

15  not tell anybody that you have this subpoena.

16          THE COURT:  Oh.

17          MR. GROSSMAN:  And as best I understand

18  from affidavits that they filed, or papers

19  represented by the opponents, somebody at Redwood

20  told their customer, because it's a finance type

21  company, told their customer they had been issued

22  this subpoena, and those customers, I believe, are

23  represented by at least one of the counsels here.

24  The owner of that company is a former officer of the

25  debtor, former principal -- you know, her husband was

```
 1   the principal, her mother is the current executor of
 2   the majority shareholder, so these are all insiders.
 3            But the point, Judge, is that there was a
 4   violation of your order.  What they are asking you to
 5   do, so think about this, just walk away -- walk back
 6   three steps, we have a debtor who has a Chapter --
 7   who has a trustee in Brazil is asking for you to
 8   unseal proceedings here after they were unable to get
 9   the Brazilian judge to unseal proceedings there.  We
10   have subpoena targets who violate an order who then
11   come before the Court and say, we want you to unseal
12   this case here to get at the information that the
13   trustees filed in this court to justify getting the
14   seal in the first place, because we didn't walk in
15   and say, we just want a seal because we want a seal,
16   we had to provide you with the sufficient basis for
17   the seal.  They want to know what we told you under
18   seal in order to justify it.  Basically, they want to
19   get inside of our investigation, because they're
20   targets, and we all know that they're targets.  They
21   know it now because your order was violated.  So they
22   wanted to get inside of our fraud investigation to
23   know what we're doing, when we're doing it, and how
24   we're doing it, so they can stay one step ahead of
25   it.  It's inappropriate under what the Brazilian
```

1  Appellate Court has ruled, it's inappropriate under

2  107, because what they're trying to get is our work

3  product that we had to share with the Court in order

4  to justify the relief that we requested, period.

5           With respect to the debtor, if this airline

6  has been out of business for 12 years, I don't know

7  why the debtor is here asking to unseal proceedings

8  here to learn how we're investigating their company

9  that's been out of business for 12 years.

10          With respect to the insiders' companies,

11  they're basically trying to get inside of our

12  investigation, and we don't think that's appropriate,

13  we think the seal was proper, because right now it's

14  protecting the information that we provide this Court

15  to justify our continued investigation.  And this

16  issue already was ventilated in Brazil, and they

17  lost.

18          So, I believe under 1521, which would be

19  additional relief after recognition, essentially

20  you're granting comity to the Brazilian's sealing

21  request.  And, by the way, this was not tangential,

22  the sealing request by the Brazilian court is in the

23  order.  It asks that the courts abroad respect the

24  seal for exactly the same reasons, Judge, that we

25  would be doing this if this was a domestic fraud

1    investigation.  Once you tell the fraud -- potential

2    fraud targets what you're doing and how you're doing

3    it, they can move their assets, they can change their

4    testimony, they can circle around us, so that's why

5    we don't believe unsealing the proceedings here is

6    appropriate at this time.

7             THE COURT:  Very well.  Anything further

8    that anyone wishes to put on the record?

9             MR. HAYNES:  Yes, Your Honor.  Thank you.

10   Your Honor, I represent three United States business

11   entities, Marigrove, Cave Creek and Cel-Air.  Among

12   other businesses, Cave Creek is developing real

13   estate in Colorado.  It has never run an airline nor

14   had any business dealings with Transbrasil.  These

15   three companies have a business relationship with

16   Redwood Capital, which is a bank out of Los Angeles.

17   There is a considerable loan involved from Redwood,

18   and to get that type of loan, a business has to

19   disclose their tax returns, their financial

20   statements, a lot of sensitive business information

21   which has been disclosed to them in order to get the

22   loan.  This loan has been ongoing for a number of

23   years, it's been reworked and amended as the business

24   progresses, and there's a very large file full of

25   sensitive information.  My client, frankly, thinks it

1    has a competitive advantage in doing what it's doing

2    in Colorado.  There's a sky area involved, but they

3    have a lot of the type of land that their competitors

4    don't have.  If this information gets out into the

5    public, they will lose that competitive advantage,

6    and that's why we're here.

7             What happened in the case is that Redwood,

8    without any notice to us or anybody else as far as we

9    know, was served a subpoena for our financial

10   records, because California law requires a financial

11   institution to notify customers when their records

12   are being subpoenaed.  The loan officer sent a copy

13   to the principal of our client and we found -- and

14   that's the only reason that we found out that our

15   information was being subpoenaed.  And we vigorously

16   dispute that that information should be disclosed to

17   these Brazilian trustees.

18             I would note that we did file under seal,

19   so I don't know if the Court has it, but I have extra

20   copies, the declaration by Moricci Cipriani

21   (phonetic), who is the principal of these businesses,

22   explaining to the Court verified by law that these

23   companies have never had any business dealings with

24   Transbrasil, they don't hold any Transbrasil assets,

25   they're not a creditor, they're not a debtor, they're

1    just not part of this.  They have their own separate

2    businesses, and we dispute the concept that this

3    Brazil case is necessarily -- is necessarily sealed.

4              What I've been able to understand, and part

5    of this history is recited in the trustees' own

6    papers, is that this case has gone through a history

7    of sealing and unsealing, and we're informed that

8    today the seal order is on appeal yet again and may

9    be unsealed, for all we know, within the next month

10   or two.  But nothing that I have seen from a

11   Brazilian court requests that this Court seal its

12   file, I haven't seen that anywhere, and it's not in

13   the trustees' papers.

14             So I don't know where that comes from, but

15   I think the place to start is, what does U.S. law

16   provide, this is a procedural issue, that this Court

17   decides how it's going to proceed.  It's not a Brazil

18   issue and, frankly, I think the presentation the

19   Court has just heard maybe lifts the spirits up a

20   bit, and what's going on here is that the trustees

21   are not happy with the results of their litigation in

22   Brazil, and they're trying to export and relitigate

23   their dispute now in this court, which is not what

24   Chapter 15 is supposed to be about.

25             But the basic rule that this Court follows

1   is Section 107 of the Bankruptcy Code, which codifies

2   the public right to access documents filed in a

3   bankruptcy case.  What the trustees are asking is

4   that the Court take a very narrow exception to 107,

5   and make it extremely broad.  107 has a narrow

6   exception to protect trade secrets or confidential

7   research, development, or commercial information.

8   This airline hasn't been in business for 12 years, it

9   doesn't have any trade secrets to protect.

10          What you're being asked to protect is

11  apparently an investigation suspected avoidable

12  transactions.  Well, that's something that trustees,

13  this Court, Courts across the United States do every

14  day, and they do it under Section 107, and they do it

15  in the open, transparently, with due process for

16  everyone.  Even in a criminal case in the United

17  States, the law requires that the target of the

18  investigation be informed that he or she's a target.

19  And then when even doing that, even in a criminal

20  case, you're entitled to confront your accusers.  We

21  don't know what we've been accused of, if anything.

22  We know that the trustees have been wrong about some

23  things in the past, and if they think that we are in

24  possession of some of their assets, they're wrong

25  about that, and we'd like to know what the accusation

1   is, what the basis is, so that we can come in and

2   defend ourselves.  And Section 107 isn't all of the

3   applicable law here.  The Supreme Court has announced

4   in the Richmond newspapers and the Chicago Tribune

5   cases a first amendment right of access to court

6   records.

7           And, by the way, Your Honor, the trustees'

8   papers say we want to look at their discovery, that's

9   not what we're asking for.  We haven't asked for any

10  deposition transcripts or what documents they've

11  gotten from subpoenas, although that may be

12  appropriate in the future, we want to see what is in

13  this Court's file, the pleadings that have been filed

14  ought to be open.  Under 107, under the First

15  Amendment, and also the common law right of access

16  announced by the U.S. Supreme Court in the Nixon case

17  which, again, if this file is to be sealed, it's not

18  because the file in Brazil has been off and on seal,

19  it's because American law would call for it to be

20  sealed, and what -- to do that, according to the

21  Nixon case, justice requires that justice would

22  require sealing a case, weighing not only our

23  interest in financial privacy of our business papers

24  and financial affairs, but also the public's right to

25  have access to judicial files, and the presumption

1   that court files are open.  They have to show good

2   cause, and they haven't.  All they've said is, well,

3   there's a Brazil order sealing a case, so that ought

4   to end it.

5           Your Honor, we believe that the public

6   policy, as announced by this Court, supports

7   unsealing the file, and that's the Kapila case, where

8   this Court made what I thought was a very eloquent

9   statement in favor of public access in Court files

10  except in the most unusual situations, and looking

11  for avoidance actions is not that kind of an unusual

12  situation, particularly where we have an inconsistent

13  record from Brazil on the plane.

14          In terms of comity, Your Honor, I've seen

15  nothing where the Brazil Court asked this Court to

16  seal its file, but if it did, we think that Section

17  1506 of Chapter 15 would say no, that is the public

18  policy statement in Chapter 15, if an action would be

19  manifestly contrary to the public policy of the

20  United States.

21          I would cite the Court to a case we did not

22  put in our papers, because we didn't know that comity

23  was being requested, but that's the In Re:  Vitro,

24  S.A.B. case from a Bankruptcy Court in Texas, 473

25  B.R. 117, which sums up the cases decided under 1506,

1   and decided not to give comity to what I would

2   characterize as a Mexican plan of reorganization,

3   because it violated fundamental principals that

4   underlie the United States Bankruptcy Code as to how

5   creditors are to be treated.  Why should 1506 be

6   implemented here?  Well, because what the Court is

7   being asked to do is contrary to Section 107,

8   contrary to the First Amendment to the United States

9   constitution, contrary to the public policy of open

10  access to court records announced by the United

11  States Supreme Court.

12          I would not in the Vitro case, one of the

13  cases cited was In Re:  Topt, where recognition was

14  asked of a German order that e-mail be intercepted,

15  and the United States Court turned that down and

16  said, no, that may be something that goes on in

17  Germany, but in the United States, we're going to

18  protect the privacy interests of those e-mail senders

19  and recipients.

20          And, finally, just to illustrate the

21  practical point, Your Honor, Redwoods is now being

22  accused of violating a court order.  I don't believe

23  they did that intentionally as I think it was

24  completely inadvertent, but they will deal with their

25  own issues.

1          But what happened here is that the order

2    presumably drafted by Mr. Grossman instructed Redwood

3    not to tell its only customers that the customers'

4    files had been subpoenaed, while California law

5    requires that they do so.  And I know, and we cite

6    the case in our papers, Colorado law requires

7    financial institutions to notify customers when they

8    get a subpoena, I think that's true in many states.

9    What Mr. Grossman is asking this Court to do is put

10   financial institutions and other subpoena recipients

11   in an intolerable situation, and it's not necessary.

12   We don't need secrecy for him to conduct discovery

13   and see if there are avoidable transfers here,

14   particularly where people need to protect their

15   interests.

16          So for all those reasons, Your Honor, we

17   would ask that this Court's pleadings file be

18   unsealed so that we can all see what's happened here,

19   and if actions need to be taken to protect the rights

20   and interests of non-parties to this case, we can

21   take those actions.

22          Thank you.

23          MR. EDELBOIM:  I have something to add --

24          THE COURT:  Yes, Mr. Edelboim, go ahead.

25          MR. EDELBOIM:  -- to the motion to unseal.

1        As I stated earlier, our firm represents

2   the Fontana estate or majority shareholders of

3   Transbrasil.

4        As Your Honor is aware, this case has been

5   pending for three years, and since the commencement

6   of this case, there have been essentially no

7   documents or records available to anybody other than

8   the trustee, and what's been filed by the Court, with

9   the exception of the petition that was filed, and one

10  subpoena that was issued on Delta Airlines.

11  Everything since then, and that was in early 2011,

12  approximately April of 2011, everything after that

13  has been entirely sealed.

14        The only reason why we know that there are

15  multiple motions and orders of this Court that have

16  continued to seal this case is because that was

17  revealed in the trustees' response to the motion that

18  we have filed.  So the very motion sealing this

19  proceeding is under seal, and the orders are also

20  under seal.  So essentially nobody except for

21  Mr. Grossman and the trustees in this court know the

22  reason for the sealing of the case.

23        We're going on close to three years now,

24  and what was supposed to be apparently a temporary

25  seal of the record has become a permanent one,

1   leaving creditors and interested parties completely

2   in the dark about what is going on in this case.

3           Essentially, the trustee is asking this

4   Court for a blanket sealing of the record.  There is

5   nothing in the record right now of any substance

6   other than the voluntary petition and the documents

7   that have been filed in support.

8           This Court is joined by a number of other

9   courts in ruling that there should be no cloak of

10  secrecy over Bankruptcy Court proceedings, and that

11  was Your Honor's view in Espirito Santo Bank case.

12  There is a presumption of open access to the courts

13  for the public under the Bankruptcy Code, and this

14  Court's bankruptcy attorneys and trustees alike do

15  everything in the sunshine in this court with notice

16  and an opportunity to be heard.  And we also refer to

17  that as due process.

18          Here, the trustees are asserting that they

19  have good reason for the seal.  They are essentially

20  asking the Court to protect their research and mental

21  impressions.  Essentially, they're saying, we don't

22  want you to see what our subpoenas are asking for,

23  because you might not like what we are looking for.

24          This case presents nothing different than

25  any other trustee investigating whether there are

1   assets or funds to be recovered within the United

2   States.  If a trustee is entitled to seal a subpoena

3   based on their mental impressions or what might be

4   learned from the subpoena, there would be a lot of

5   sealed subpoenas in this courtroom.

6           Our firm of Bast Amron routinely represents

7   fiduciaries and trustees, and when we serve

8   subpoenas, the parties in interest always get notice,

9   as a basic tenet of bankruptcy law.  The trustee

10  attempts to rely on one exception to the rule, that

11  is that this discovery is confidential research under

12  Section 107(b).  But that is not what Section 107(b)

13  is intended to protect, it is intended to protect

14  proprietary commercial information, not the discovery

15  served by a trustee on third parties or litigants.

16          We want to be clear here, that we're not

17  asking the Court for any documents that the trustee

18  received pursuant to those subpoenas.  We are also

19  not asking privileged work product or even any of the

20  trustees notes or confidential information.  What we

21  merely want, Your Honor, is the Court to unseal the

22  record and let the public know, and the parties in

23  interest know, and the creditors know what is going

24  on, and be afforded the opportunity to view what is

25  happening in this case.  No matter what happens in

1   the litigation in Brazil, Your Honor, the trustees

2   have come to this Court, and they are seeking access

3   to our system, and the trustees should be required to

4   play by our rules.

5          Accordingly, we're asking the Court to

6   unseal the proceedings in this case.

7          THE COURT:  Very well.  Anyone else that

8   wishes to be heard?

9          MR. GROSSMAN:  Thank you, Your Honor.  I

10  want to make sure that the Court understands what --

11  we've got really two issues here.

12         THE COURT:  You're going to have a lot of

13  trouble making the Court understand.

14         MR. GROSSMAN:  We have two issues, now that

15  the motion to dismiss is being deferred for further

16  consultation with counsel.  There's the first

17  question about whether or not the proceedings here,

18  the court papers, should be unsealed.  And then

19  there's a second issue that was raised in the

20  opponents' papers saying whether or not the documents

21  that we had requested be provided by Redwood, whether

22  or not those documents ought to be produced, and if

23  they are produced, whether or not they should be

24  protected.

25         Counsel was here talking about their

1    confidential information, their loan strategies, and

2    those kinds of things, so I'm going to take these in

3    two pieces, Judge, because I think we kind of mixed

4    them up.  The first issue is whether or not these

5    proceedings should be unsealed.

6            The issue, from our perspective, what we

7    see pretty clearly is that we needed to advise this

8    Court our grounds to request that we should be able

9    to issue the subpoenas to parties -- to third parties

10   and asking them to keep the information under seal.

11           In order to justify that relief, we had to

12   necessarily provide this Court with our confidential

13   work product as to what was our basis, where's the

14   nexus between the debtor's affairs and these third

15   parties.  We believe we've satisfied that nexus by

16   showing this Court that nexus was already litigated

17   and resolved in Brazil.  And Counsel is right, they

18   have now a further appeal that remains pending but,

19   of course, there's no suspension order, as they call

20   it in Brazil, so right now those proceedings are

21   sealed unless they're not.  Unless and until they're

22   not, they will be sealed, and they are currently

23   sealed.

24           So in order to ask this Court, we have to

25   necessarily let Your Honor take a peek at what it is

1    that we had already developed in our investigation.

2    That's what these folks want.  In fact, the reason

3    the docket sheet has any entries in it other than the

4    actual reference to the order sealing and the

5    renewals is that our local rules require us to file a

6    piece of paper when we issue a subpoena.  That's not

7    true in District Court, it's not true in state court,

8    but we have our local bankruptcy rule that requires

9    us to put something in the docket sheet that says

10   that there's been a notice issued.  Other courts

11   don't even require that.  I think in District Court,

12   you're forbidden from filing any discovery, even the

13   request for discovery, in a court file.

14        So that's why the entry is there.  It's an

15   amusing argument to say, well, look at the docket

16   sheet, everything is under seal, but everything there

17   is subpoenas that have been issued other than the

18   seals and renewals.  So that's on the sealing issue,

19   Judge.

20        The 107 point is that is American law, I

21   agree with Counsel.  There is an American law basis

22   to seal these proceedings under these circumstances.

23   This is a fraud investigation, we're conducting it,

24   and the information that they want is to know,

25   necessarily, how it is that we are conducting that

1   fraud investigation.

2              On the other point, which I think is the

3   more immediate issue, Judge, because we have a

4   subpoena that's been outstanding and hasn't been

5   responded to, and no documents have been provided.

6   The other issue is protection of the folks whose

7   information this purports to be, and we have

8   absolutely no problem with a temporary

9   confidentiality provision or order that says, let's

10  go ahead and produce it, it won't leave the United

11  States, it will be accessed by the trustee and

12  trustee's counsel only, it won't be attached to

13  anything or whatever, and that should satisfy -- I

14  mean, obviously, the trustees are not in competition

15  with a Colorado real estate development company.

16  They're not looking to sell the information to a

17  competitor.

18              So, if they believe that they have trade

19  secrets, or confidential information, or loan pricing

20  strategies, whatever it is, they can assert that, we

21  can enter into a confidentiality on a temporary

22  basis, try and resolve -- I mean, we don't have the

23  documents, Judge, so we can't look at the documents

24  and say, well, this one is obviously not confidential

25  where we can all agree upon that, but we don't have

1    that.  We don't have a catalog of what they are, and

2    we don't have a log of what they are.

3              So, I would ask Your Honor to move the ball

4    forward here.  We have absolutely no problem

5    protecting from disclosure to the public the

6    documents that would otherwise be responsive.  That

7    should solve any competitive advantage here and the

8    improper use of it.

9              Let me come back before Your Honor if we

10   reach impasse on once we have the documents, whether

11   or not they reveal too much, or they ought to be

12   redacted, or they ought to have additional

13   protections afforded to them, that's fine, I have no

14   problem with that.  But, right now, all we have is a

15   blanket statement that everything we've asked for is

16   really sensitive proprietary commercial information,

17   trades secret, et cetera.  We cited the cases saying

18   a blanket statement like that is not sufficient but,

19   nonetheless, if the documents are in, we'll go

20   through them, I'm sure we can enter into a very

21   onerous temporary confidentiality provision that will

22   then make sure nothing happens to this stuff, and if

23   we can get resolution on what to do with it

24   thereafter, we'll try, if we can't, we'll come back.

25              What I thought was interesting is one of

1   the declarations by Ms. Cipriani, daughter of

2   majority shareholder, former officer of the

3   corporation, former director, former shareholder of

4   Transbrasil, her husband was the president after her

5   father passed away or at different times, these are

6   all the insiders of the corporation, I thought it was

7   interesting, she said she had nothing to hide, so

8   let's move the ball forward.  If they're right,

9   there's no connection, there's no nexus, then we will

10  be able to see from the documents that they produce

11  no connection, it may require follow-up, but at least

12  we move the ball forward on the discovery.

13          In the meantime, I think that counsel is

14  right, they have an appeal pending, I have absolutely

15  no problem with part of an order that says if for

16  some reason they win the appeal, that we can all come

17  back here and tell the Court they've won the appeal,

18  the Brazilian proceedings are unsealed, therefore the

19  one here should be unsealed, as well, I have no

20  problem with that either.

21          So, I look at this as we need to move the

22  ball forward here, we have been stymied a bit and,

23  you know, that's my request, Judge, that we move the

24  ball forward on the discovery, we keep the status quo

25  on the seal, and see how events take us.

1        THE COURT:  Thank you.  Anyone else?

2        MR. HAYNES:  Yes, Your Honor.  Briefly on

3   the motion to quash which counsel just alluded to, we

4   did file a third motion, motion to quash a subpoena

5   issued to Redwood.  We think that logically, that

6   ought to be taken up after the dismissal issue is

7   resolved, if the case is dismissed, then we don't

8   need to deal with the motion to quash.

9        In addition, we haven't seen the documents

10  that have been subpoenaed.  We've never been able to

11  screen them for privilege, relevance, anything else

12  because Redwood is concerned that it might violate a

13  court order if they give them to us.  So, what we

14  need to do is unseal the file, then we can look at

15  the documents, and then deal with dismissal and

16  figure out with counsel what specific objections we

17  might have.

18       In terms of a confidentiality order, we

19  think this is a situation where that just can't work,

20  because we can't think of a practical way where this

21  Court's confidentiality order could be enforced in

22  Brazil, which is where the trustees are from and,

23  frankly, Your Honor, this has been a controversial

24  case in Brazil, this was a large airline, it did

25  employ a lot of people, it's been in the press, some

1   crazy accusations have been made, frankly, and if

2   information about these parties financial dealings

3   gets into Brazil, it's going to be made public, and

4   we don't have any way to stop that and enforce a

5   confidentiality order.

6           So, first things first, we need to unseal

7   the file, then we can look at what documents have

8   been subpoenaed.  Our client has told us in general,

9   well, here's the categories of things we have given

10  them.

11          THE COURT:  Well, if we unseal it, would

12  that not unseal everything?  In other words, then if

13  the subpoenas were honored, what was produced would

14  be also unsealed?

15          MR. HAYNES:  We would like a court to say

16  that at least we ought to be able to see our own

17  client's papers that have been subpoenaed.  We're

18  not -- you're correct, Your Honor, we're not asking

19  to take a look at their discovery file, that's not

20  what we're asking, but we at least ought to be able

21  to look at our own client's documents that have been

22  subpoenaed for Redwood so that we know what

23  objections we may have, what we can present to this

24  Court, I mean, it's our information.

25          MR. GROSSMAN:  Judge, we have no objection

1  to that, we can work out a procedure.  I can think of

2  numerous ways where Redwood could Bate stamp label

3  what they intended to produce, give them copies of

4  what they intended to produce, give them a period of

5  time for them to go through it and --

6         THE COURT:  Well, that may be a partial

7  solution, let's finish up our presentation so we can

8  get you off to lunch.

9         MR. HAYNES:  Well, we do need to look at

10  the pleadings file, Your Honor, so we know what's

11  relevant and what's not, because we can't think of

12  why anything these three entities would have would be

13  relevant to anything these trustees are doing.

14          In terms of the nothing to hide argument,

15  Your Honor, that's the oldest trick in the book in

16  order to invade somebody's privacy.  I don't have

17  anything to hide, I mean, I certainly don't have a

18  lot of money, but I don't want some stranger

19  rummaging through my tax returns or my banking

20  records just because they're curious about it or

21  somebody has told them something --

22         THE COURT:  But if we grant your motion to

23  unseal, isn't that stuff going to go out into the

24  public?

25         MR. HAYNES:  The pleadings will, yes, Your

1   Honor, and that's fine, pleadings ought to be a

2   matter of public record.

3           THE COURT:  Okay.  Anyone else that hasn't

4   been heard that wants to be heard, or has been heard

5   and needs to be heard again?

6           MR. DERVISHI:  Judge, I've been quiet, and

7   I --

8           THE COURT:  You can now make some noise, go

9   ahead.

10          MR. DERVISHI:  Brian Dervishi, just very

11  briefly, Your Honor.  We can't have a meaningful

12  opportunity to litigate whether or not that subpoena

13  should be quashed until we have an opportunity to

14  review the court file, so whether there's a basis for

15  that subpoena or not, I think that issue should be

16  reserved until we get a determination of whether or

17  not you open up the court file to us.

18          Thank you, Your Honor.

19          THE COURT:  Okay.  Are we all done?

20  Anybody have anything else that I haven't heard yet

21  that I need to hear?

22          Well, I think that I can conclude that the

23  center of main interest in this case is in Brazil.

24  Beyond that, I'm not sure that I know anything else.

25  I'm puzzled by an airline that's been out of business

1  for 10 years, and if there's a seeking of avoidance

2  actions or activity relating to that 10 year old

3  closing of the airline, I'm wondering what is out

4  there to be pursued, but I presume that somebody has

5  some idea about that.

6          It's also impressive that we have 10 people

7  in the courtroom, and one on the telephone, here,

8  some having traveled great distances, if I

9  understand, these clients came from Brazil, and from

10  Denver, so there must be something going on here that

11  involves some financial value, or we wouldn't have

12  all these highly skilled, highly professional lawyers

13  here presenting these arguments.

14          Now, as to Brazil, the Court must tell you

15  that the Court doesn't have a good impression of what

16  goes on in Brazil in their judicial system, but that

17  is neither here nor there, what we're going to have

18  to deal with is what goes on in this country where we

19  do have some control over the judicial system, but

20  that is neither here nor there, what we're going to

21  have to deal with is what goes on in this country

22  where we do have some control over the judicial

23  system.

24          As to secrecy, in Chapter 15 cases, and in

25  other cases, even in domestic cases, it's not

1  uncommon under some circumstances to start out with

2  things under seal so that people don't get tipped off

3  and get a change to jump on an airplane and fly away

4  or bury a tin can full of gold in the back yard.

5  Ultimately, matters that are sealed get unsealed.  In

6  fact, after, I think, a period of five years, the

7  clerk unseals everything, where there's one exception

8  of which I'm aware, and that's the Banco Latino case

9  out of Venezuela where we had a large number of

10  creditors who had millions of dollars involved, and

11  they didn't want their names made public because

12  there's a game they play in South America that is not

13  so popular here called kidnapping.  And so we did

14  protect those people, and in that case we did not

15  ever unseal that information.

16          But whether sealed or unsealed, I'm not so

17  sure.  If there's to be unsealing, that doesn't

18  prevent the parties from filing a privilege log and

19  claiming that what is sought is still -- should be

20  protected.

21          Another interesting question raised is that

22  according to what I've heard, Mr. Grossman's order

23  directed Redwood not -- in essence, to violate

24  California law, can an order of this Court direct a

25  citizen of another -- a state to violate the state's

1    law, an interesting question never posed to me before

2    today.

3           So, I'm not in a position to shoot from the

4    hip on this matter.  I'm going to ask that the

5    parties prepare proposed memorandum decisions on this

6    issue, and how much time do you need to get your

7    orders in, 14 days, 21 days, what's your pleasure?

8           MR. HAYNES:  14 days should be sufficient,

9    Your Honor.

10          THE COURT:  14 days works?

11          MR. GROSSMAN:  That works, Your Honor.

12          THE COURT:  That would make it somewhere in

13    March, I guess.  Today being the 26th, it ought to be

14    about the 12th.

15          MR. GROSSMAN:  Your Honor, I'm going to

16    backtrack a bit, I think 21 days only because I think

17    we have to spend the next 14 days deciding whether or

18    not --

19          THE COURT:  Okay.  So, then, the 19th of

20    March.

21          MR. GROSS:  Thank you, Your Honor.

22          THE COURT:  So we'll ask for orders by the

23    19th of March, and now, Mr. Haynes, are you familiar

24    with the procedure for sending in an order that is to

25    be considered by the Court?

```
 1              MR. DERVISHI:  We'll help him, Your Honor.

 2              THE COURT:  Okay.

 3              MR. HAYNES:  Mr. Dervishi and Mr. Tappert

 4    know.

 5              THE COURT:  We have a chambers box.  If it

 6    goes to the wrong place, it's in danger of getting

 7    entered as it comes in when it shouldn't be.  If it

 8    goes to the chambers box, then the Court gets them

 9    all and considers them and can either accept one, or

10    reject one, or modify, or edit one.

11              So, how many orders are we going to get,

12    one from Mr. Grossman, one from Mr. Haynes, and what

13    about Mr. Edelboim, are we going to get three orders,

14    or is anybody going to cooperate?

15              MR. EDELBOIM:  I think that we can

16    cooperate with these parties, and we'll prepare one

17    order.

18              THE COURT:  Okay.  Then Mr. Edelboim and

19    Mr. Haynes, I suppose, will be on the same page, and

20    Mr. Grossman will be on the other side.

21              What else can we do here?

22              MR. HAYNES:  Your Honor, can we request

23    also that while the Court is considering the motion

24    to unseal, that we not have more motions or subpoenas

25    filed under seal that we can't see, at least for that
```

1  period of time?  We just don't know what these folks

2  are doing to try to get ahold of our financial

3  information?

4           THE COURT:  Mr. Grossman, response?  Does

5  that bother you, or is that something you can hold

6  off on, or do you feel that you have to go forward

7  with something?

8           MR. GROSSMAN:  Your Honor, I'm not in a

9  position to know exactly what's -- whether we have

10  additional subpoenas.  I understand Counsel's point

11  to not sort of change the circumstances on the

12  ground.  If, in fact, we need to issue a subpoena

13  that is unrelated to this part of it, I still --

14  while we may be looking at somebody else, not these

15  folks or --

16           THE COURT:  Then let's just make a decision

17  that nothing will be done in that area without

18  further order of Court.  In other words, if you don't

19  need to do anything, then it can remain still.  On

20  the other hand, if you feel the need to do something,

21  then you need to file a motion, and give the parties

22  an opportunity to be heard.

23           MR. GROSSMAN:  That's fine, Your Honor.

24           THE COURT:  And is there any way we can

25  reduce expenses by having people call on the

1   telephone?  They have telephones in Brazil, don't

2   they?

3              MR. GROSSMAN:  This wasn't the only reason

4   they came, so --

5              THE COURT:  Oh, okay.  Well, they're not

6   having snow storms down there.

7              So what else can we do here today,

8   anything?

9              MR. GROSSMAN:  I don't think so, Your

10  Honor.

11             MR. HAYNES:  Nothing further, Your Honor.

12             THE COURT:  Then we'll adjourn this

13  hearing.

14             (Thereupon, the hearing was concluded.)

15

16

17

18

19

20

21

22

23

24

25

Page 49

1                         CERTIFICATION

2

3   State of Florida:

4   County of Dade:

5

6             I,  BONNIE  TANNENBAUM,  Shorthand Reporter

7   and Notary  Public  in  and  for the State of Florida

8   at Large,  do  hereby  certify  that  the  foregoing

9   proceedings  were  taken  before  me at  the date and

10  place  as  stated  in  the caption  hereto on Page 1;

11  that the  foregoing computer-aided transcription is a

12  true record of  my  stenographic  notes taken at said

13  proceedings.

14            WITNESS  my  hand  this 10th day  of March,

15  2014.

16

17            _____
                    BONNIE  TANNENBAUM
18            Court Reporter  and Notary Public
           in and for the State of Florida at Large
19            Commission Number:  DD 968452
                    Expires:  June 22, 2014
20

21

22

23

24

25