IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 14-cv-22580-KMM

MARIGROVE, INC., CAVE CREEK HOLDINGS,
CORP., and CEL-AIR INCORPORATED,

        Appellants,

vs.

GUSTAVO HENRIQUE SAUER DE
ARRUDA PINTO and ALFREDO LUIZ
KUGELMAS, as Co-Trustees for Transbrasil S.A.
Linhas Aéreas, Debtor in Foreign Proceeding,

        Appellees.

_____/

## ORDER

      THIS CAUSE is before the Court on appeal from the bankruptcy court's Order on Motions to Unseal Discovery Proceedings and Motion to Quash Subpoena Duces Tecum for Rule 2004 Examination, entered in In re Transbrasil S.A. Linhas Aéreas, Bankr. No. 11-19484-AJC, docket entry 95.[1]  Marigrove, Inc., Cave Creek Holdings, Corp., and Cel-Air Incorporated ("Appellants") filed their Opening Brief (ECF No. 12), Gustavo Henrique Sauer de Arruda Pinto and Alfredo Luiz Kugelmas, as Co-Trustees for the Debtor Transbrasil S.A. Linhas Aéreas ("Trustees" or "Appellees") filed their Response Brief (ECF No. 23), and Appellants filed their Reply Brief (ECF No. 25).  Additionally, Appellees filed a Motion for Partial Dismissal of Appeal (ECF No. 6), Appellants filed a Response in Opposition (ECF No. 22), and Appellees filed a Reply (ECF No. 24).  This matter is ripe for review.  For the reasons stated herein, Appellees' Motion for Partial

_____

[1] Hereinafter, the Court will use "Bankr. ECF No." in the citation to refer to docket entries filed before the bankruptcy court in Bankr. No. 11-19484-AJC.  All other citations refer to the instant docket.

Dismissal of Appeal is GRANTED and the bankruptcy court's Order is AFFIRMED IN PART AND DISMISSED IN PART.

## I.    BACKGROUND

On April 7, 2011, the Trustees for Transbrasil S.A. Linhas Aéreas ("Transbrasil") filed a Verified Petition for Recognition of Foreign Main Proceeding Pursuant to §§ 1515 and 1517. (Bankr. ECF Nos. 1, 2).  The Chapter 15 proceeding was based on an involuntary bankruptcy proceeding against Transbrasil in the Brazilian court that was originally instituted in 2002.  Pet., at 3 (Bankr. ECF No. 2).  In the Petition, it states that the Trustees desire "to proceed with this Chapter 15 action in order to seek records and other information relating to assets of Transbrasil or its subsidiaries or related companies that are in or were transferred through the United States."  Id. at 4. The bankruptcy court granted the Chapter 15 Petition and recognized the Chapter 15 proceeding on May 12, 2011.  (Bankr. ECF No. 9).

Subsequently, the Trustees filed Motion of Trustees for Order Permitting Filing under Seal and Related Relief, asking the bankruptcy court to: (1) authorize the issuance of subpoenas under seal; (2) seal certain documents filed by the Trustees in support of requests for discovery; and (3) require that recipients of subpoenas maintain the confidentiality of the fact and content of the same. (Bankr. ECF No. 12 (sealed)).[2]  The bankruptcy court granted the Trustees' Motion for a period of 180 days.  (Bankr. ECF Nos. 13, 14 (sealed)).  The Trustees subsequently filed Motions to extend the seal.  (Bankr. ECF Nos. 15, 18, 22, 26, 32, and 65 (sealed)). The bankruptcy court granted

---

[2] The copies of the sealed documents that were provided to the Court may not have the correct docket entry listed.  While the Court has attempted to make sure that the docket entries of the sealed documents referenced in this Order are correct, it notes the possibility that they may not be exact.

Trustees' Motions and extended the seal, each time for a period of 180 days.  (Bankr. ECF Nos. 16, 17, 19, 20, 23, 24, 27, 29, 30, 33, 34, 66, and 67 (sealed)).[3]

The Trustees obtained information that certain entities, including Cave Creek Holdings Corp., Energy Ventures Limited, Trilogy Holdings Limited, and Cel-Air Incorporated, may have property belonging to, or traceable from, Transbrasil.  Appellees' Resp. Br. ("Resp. Br."), at 2 (ECF No. 23).  The Trustees petitioned the Sao Paulo court, under seal, for authorization to investigate the affairs of these offshore entities, but that petition was initially denied.  See (Bankr. ECF No. 62, at 28–29, Ex. GS1).  On July 30, 2013, the 9th Private Law Bench of the Court of Justice of the State of Sao Paulo reversed the trial court's ruling on appeal and extended the investigation under seal to the offshore entities.  Id. at 3–4, Ex. GS1.

On December 26, 2013, a Subpoena Duces Tecum for Rule 2004 Examination (the "Subpoena") was issued to Redwood Capital Finance, LLC ("Redwood") under seal and with explicit instructions to Redwood that a court order restrained Redwood from disclosing the fact and content of the Subpoena.  See Mot. to Dismiss Case or in the Alternative to Quash Subpoena Duces Tecum for Rule 2004 Examination, Ex. A (Bankr. ECF No. 40 (sealed)).  The Subpoena sought financial information related to Cave Creek Holdings Corp., Cel-Air Incorporated, Energy Ventures Limited, and Trilogy Holdings Limited.  Appellants' Opening Br. ("Opening Br."), at 6 (ECF No. 12); see also Mot. to Dismiss Case or in the Alternative to Quash Subpoena Duces Tecum for Rule 2004 Examination, Ex. A.[4]  Redwood sent a copy of the Subpoena to Appellants' principal, Marise

_____

[3] Hereinafter, the term "Sealed Orders" will collectively refer to bankruptcy docket numbers 13, 14, 16, 17, 19, 20, 23, 24, 27, 29, 30, 33, 34, 66, and 67.  The term "Sealed Motions" will collectively refer to bankruptcy docket numbers 12, 15, 18, 22, 26, 32, and 65.

[4] Since the court order restraining Redwood from disclosing the fact and content of the Subpoena was not heeded by Redwood and the Subpoena is referenced in both parties' briefs, the Court sees no harm in recounting its contents here.  The Subpoena ordered Redwood to produce the following documents with regard to Cave Creek Holdings Corp., Cel-Air Incorporated, Energy Ventures Limited, and Trilogy Holdings Limited: (1) any and all documents, including but not limited to,

Cipriani ("Cipriani").[5]  See (Bankr. ECF No. 68.)  Appellants moved to quash the Subpoena, unseal

the entire record, and dismiss the Chapter 15 case.  (Bankr. ECF Nos. 40, 41).

On February 26, 2014, the bankruptcy court held a hearing on Transbrasil's Motion to

Dismiss Case and Unseal Discovery Proceedings (Bankr. ECF No. 44), Appellants' Motion to

Dismiss Case or in the Alternative to Quash Subpoena Duces Tecum for Rule 2004 Examination

(Bankr. ECF No. 40), and Appellants' Motion to Unseal (Bankr. ECF No. 41).  The bankruptcy

court requested that each side prepare proposed forms of the order on the motions.  See (Bankr.

ECF No. 72).

On April 24, 2014, the Court entered Order on Motions to Unseal Discovery Proceedings

and Motion to Quash Subpoena Duces Tecum for Rule 2004 Examination ("Order" or "April 24

Order").  See Order (Bankr. ECF No. 95).  This Order underlies the instant Appeal.  In the Order

the bankruptcy court deferred Transbrasil and Appellants' Motions to Dismiss for further hearing at

a later date.  Id. at 1–2.  The bankruptcy court granted in part and denied in part Transbrasil and

Appellants' Motions to Unseal.  Id. at 2.  The bankruptcy court granted the Motions to Unseal to the

extent that any future filings would not be filed under seal, absent a specific request for sealing prior

to the filing of such motion, paper, or pleading.  Id. at 5.  The Motions to Unseal were denied with

---

correspondence, account statements, guarantees, etc. relating to any of Cave Creek Holdings Corp.,
Cel-Air Incorporated, Energy Ventures Limited, and Trilogy Holdings Limited's accounts during
the period between the inception of the account(s) and the present; (2) any and all documents
relating to a mortgage issued by Redwood to Marigrove, Incorporated on February 17, 2009, and
which was secured by Cave Creek Holdings, Corp., and Cel-Air Incorporated, and which relates to
the following real estate: 22100 Southwest 194th Avenue, Miami, Florida; and (3) any and all
documents showing the amount and source (i.e., cancelled checks, wire transfer advices, etc.) for
any payments received by Redwood in connection with the referenced mortgage.  See Mot. to
Dismiss Case or in the Alternative to Quash Subpoena Duces Tecum for Rule 2004 Examination,
Ex. A.

[5] Cipriani, Appellants' principal, is the wife of the former President of Transbrasil, Antonio Celso
Cipriani.  See Resp. Br., at 1; see also (Bankr. ECF No. 72).  Cipriani's father, Omar Fontana, was
the founder of Transbrasil.  Id.  Cipriani's mother appeared in the Chapter 15 case on behalf of
Transbrasil.  Id.

4

regard to all motions and papers that were under seal at the time that the Order was entered. Id. The bankruptcy court ordered that already sealed motions and papers "shall remain under seal under the terms, conditions, and timeframes currently existing." Id. Finally, the bankruptcy court denied in part and deferred in part Appellants' Motion to Quash and set out specific procedures for the secure production of the requested documents. Id. at 6–8.

On July 11, 2014, the Court received the Notice of Appeal of the Order. (ECF No. 1).[6] Subsequently, on July 22, 2014, Appellees filed Motion for Partial Dismissal of Appeal asking the Court to dismiss the portion of the appeal pertaining to the denial of Appellants' Motion to Quash the Subpoena. See Mot. for Partial Dismissal (ECF No. 6).[7]

---

[6] The Appellants filed the Notice of Appeal in the bankruptcy court on May 8, 2014. (Bankr. ECF No. 103). On May 14, 2014, Appellants filed a Motion for Stay Pending Appeal. This Motion was docketed on June 2, 2014, in this Court under case no. 14-mc-22034-KMM. The Motion asks the Court to enter an order staying the execution of the bankruptcy court's April 24 Order because: (1) Appellants are likely to prevail on appeal; (2) the absence of a stay will render this issue unreviewable; (3) a stay will not harm the bankruptcy estate; and (4) the public interest is best served by a robust and immediate review of the order. On May 22, 2014, the bankruptcy court entered Order Continuing Temporary Stay Pending Appeal. (Bankr. ECF No. 115). The Order states that the April 24 Order is "stayed until such time as the District Court rules on the affected Parties' Motion for Stay Pending Appeal." Id. at 2. Effectively, the bankruptcy court implemented a stay until the motion for stay pending appeal was ruled on or the April 24 Order was affirmed or reversed. In light of the instant Order, Appellants' Motion to Stay Pending Appeal will be denied as moot and case no. 14-mc-22034-KMM will be closed.

[7] The facts of this case can be simply stated. Transbrasil was forced into bankruptcy in Brazil. The Trustees were appointed to find assets of Transbrasil that could be used to pay creditors. The Brazilian Court authorized the Trustees to conduct their investigation confidentially and under seal. The Trustees filed a Chapter 15 proceeding with the bankruptcy court. The Trustees submitted a number of motions under seal to the bankruptcy court that described the work that they performed during the course of their investigation. The Sealed Motions asked the bankruptcy court to grant the Trustees' request to conduct discovery in a confidential manner in light of the Trustees' suspicion that disclosure would compromise their investigation, and assets and information that would further their investigation, may disappear. The bankruptcy court granted the Trustees' request and allowed the Trustees to go forward with their investigation under seal. The Trustees served Redwood with a Subpoena asking for financial information related to Appellants. This appeal arises because Appellants do not want Redwood to produce the documents and Appellants want access to the Sealed Motions.

## II.    ANALYSIS

There are two issues before this Court on appeal.  First, whether the bankruptcy court abused its discretion in granting the Trustees' Sealed Motions and leaving the seal in place with regard to documents filed prior to the April 24 Order.  Second, whether the portion of the Order regarding the Motion to Quash Subpoena is interlocutory.[8]

### A.  Motion to Unseal the Record

In the Order, the bankruptcy court determined that all of the motions and papers under seal at the time the Order was entered would remain under seal.  Order, at 5.  However, the bankruptcy court recognized that, in light of the instant suit, there was no reason to keep a seal on discovery related to Transbrasil and Appellants going forward.  Id.  Accordingly, the bankruptcy court modified its Order granting the Trustees' Motion for Order Permitting Filing Under Seal so that any future filings would not be filed under seal, absent a specific request.  Id.

The bankruptcy court provided the following reasons for its decision to grant in part and deny in part Appellants' Motion to Unseal: (1) the work product of the Trustees and their retained professionals, outlined in the Sealed Motions, was confidential research subject to protection pursuant to 11 U.S.C. § 107(b); (2) the Sealed Motions were not dispositive motions and therefore, were not subject to the common law right of access; (3) the Trustees demonstrated good cause for the issuance of the Sealed Orders; (4) the law supports continuing the seal on the Sealed Motions because former principals of Transbrasil have not cooperated with the Trustees' efforts to identify

---

[8] With regard to Appellants' Motion to Quash Subpoena, the Order determined that Appellants' financial information was not confidential commercial information and Appellants had no legitimate expectation of privacy regarding its contents.  Order, at 6.  The Order further found that any state law right to privacy claimed by Appellants must yield to a federal subpoena.  Id.  In light of Appellants' concerns regarding the sensitivity of their financial information, the bankruptcy court put in place a special procedure for the production and review of the financial information.  See Order, at 6–8.  Since the Court finds that this portion of the Order is interlocutory, the Court will not address the second issue raised in Appellants' Brief, which is whether the bankruptcy court erred in refusing to quash the Subpoena.

and liquidate the assets of the estate, and unsealing the information related to the Trustees investigation could further impede the Trustees' investigation; and (5) comity with the Brazilian court that authorized the Trustees to conduct their investigation confidentially and under seal.

Appellants take issue with each of these reasons on appeal.  Appellants make the following arguments: (1) the bankruptcy court erred as a matter of law by failing to state good cause for the blanket seal in place; (2) the bankruptcy court erred as a matter of law in holding that a purported search for a bankruptcy estate's assets constitutes "confidential research" under 11 U.S.C. § 107(b)(1); (3) the bankruptcy court erred in ruling that only dispositive motions are entitled to the common law right of access and ignoring the first amendment right of access; (4) the bankruptcy court erred in granting comity to the Brazilian courts; and (5) the bankruptcy court erred because it failed to state good cause for leaving the seal in place on documents filed prior to April 24, while lifting the seal on documents going forward.  Opening Br., at i (Table of Contents).  The Court will address each argument in turn, to the extent that it warrants review.[9]

The standard of review is abuse of discretion.  See McCarthy v. Barnett Bank, 876 F.2d 89, 91 (11th Cir. 1989); Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1309 (11th Cir. 2001).  A court abuses its discretion when it misapplies the law in reaching its decision or makes findings of fact that are clearly erroneous.  See Chicago Tribune, 263 F.3d at 1309; see also Arce v. Garcia, 434 F.3d 1254, 1260 (11th Cir. 2006).

---

[9] The Court will address Appellants' argument that the bankruptcy court erred as a matter of law by failing to state good cause for the blanket seal in place, located in Section V(1)(a) of Appellants' Opening Brief, in conjunction with Appellants' argument that the bankruptcy court erred by failing to state good cause for leaving the seal in place on documents filed prior to April 24, while lifting the seal on documents going forward.

1. <u>The Bankruptcy Court Did Not Abuse Its Discretion When It Determined That the Information Provided By the Trustees in the Sealed Motions Was Confidential Research Subject to Protection Under 11 U.S.C. § 107(b)</u>

The bankruptcy court did not abuse its discretion when it determined that the information provided by the Trustees in the Sealed Motions was confidential research subject to protection by 11 U.S.C. § 107(b)(1).  Section 107(a) provides, "[e]xcept as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a).  However, Section 107(b) provides, "[o]n request of a party in interest, <u>the bankruptcy court shall</u> . . . protect an entity with respect to a trade secret or confidential research, development, or commercial information."  11 U.S.C. § 107(b) (emphasis added).  Section 107(b) applies to the bankruptcy court through Rule 9018, Federal Rule of Bankruptcy Procedure, which provides that, "[o]n motion or on its own initiative, with or without notice, <u>the court may make any order which justice requires</u> (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information."  Fed. R. Bankr. P. 9018 (emphasis added).

Courts are cognizant of the general rule that public access to court records and proceedings ought to be insured to preserve public confidence in the integrity of the judicial process.  <u>See</u>, <u>e.g.</u>, <u>In re Orion Pictures Corp.</u>, 21 F.3d 24, 26 (2d Cir. 1994); <u>Nixon v. Warner Commc'ns, Inc.</u>, 435 U.S. 589, 597–598 (1978).  However, Section 107(b) provides congressionally sanctioned exceptions to this rule, and represents the entrustment of a certain amount of discretion to a trial judge to limit public access when, as stated in Federal Rule of Bankruptcy Procedure 9018, "justice requires" such an action.  <u>See</u> <u>In re Orion Pictures Corp.</u>, 21 F.3d at 28; <u>see also</u> Fed. R. Bankr. P. 9018.  While the general rule is well-entrenched, "[i]t is uncontested . . . that the right to inspect and copy judicial records is not absolute.  Every court has supervisory power over its own records and

files, and access has been denied where court files might have become a vehicle for improper

purposes."  See Nixon, 435 U.S. at 598; see also In re Orion Pictures Corp., 21 F.3d at 27.

The bankruptcy court reviewed the information that the Trustees requested to be sealed and

found that it qualified as confidential research pursuant to § 107(b).  Specifically, the bankruptcy

court determined that "[t]he Sealed Motions describe work performed by the Trustees and their

retained professionals in their confidential investigation, work the Trustees and their retained

professionals still intend to do to advance the confidential investigation, and suspicions harbored by

the Trustees as a result of information obtained through the confidential investigation."  Order, at 2.

Accordingly, the bankruptcy court ordered that the Sealed Motions remain sealed as required by the

mandatory language of § 107(b).

Neither party cites to, nor has the Court found, a case where the term "confidential research"

is defined in the context of § 107(b).[10]  Appellants point the Court to the purported purpose of the

"commercial information exception," which they argue "is intended to protect the trade intellectual

property of a debtor from public disclosure," see Opening Br., at 14–15, and cases discussing the

limitations on the commercial information exception.  See id. at 14–16.  However, the bankruptcy

court relied on the provision of § 107 related to confidential information, rather than commercial

information, and so that definition and those cases are of little import here.

---

[10] In fact, the only case that the Court has found where a bankruptcy court determined that
something was confidential research pursuant to § 107 is In re 50-Off Stores, Inc., 213 B.R. 646
(Bankr. W.D. Tex. 1997).  In In re 50-Off Stores, the bankruptcy court found that "a lawyer's work
product is one type of confidential research that falls within the plain language of [§ 107's]
protection."  Id. at 655 (internal quotations omitted).  However, since the case dealt with waiver of
the attorney client privilege and the work product exception, the facts are not applicable to this case.
Furthermore, other bankruptcy courts have disagreed with the court's reasoning in In re 50-Off
Stores, Inc.  See In re Fibermark, Inc., 330 B.R. 480, 494 (Bankr. D. Vt. 2005) ("The Court is aware
of only one published decision addressing the relationship between these disclosure protections and
§ 107, In re 50-Off Stores, Inc., 213 B.R. 646, 655 (Bankr. W.D. Tex. 1997), and it respectfully
disagrees with the rationale of that Court on this issue.  The Court finds nothing in the text of §
107(b) that would encompass an analysis of attorney client privilege or the work product
doctrine.").

Appellants also argue that the doctrine of ejusdem generis[11] mandates that the bankruptcy court find that Congress actually meant to limit confidential research to protect from public release "research and development of new and existing products for which publication might result in an unfair competitive advantage to a debtor's competition." See Opening Br., at 15–16.  Appellants cite to Geltzer v. Anderson Worldwide, S.C., No. 05-cv-3339-GEL, 2007 U.S. Dist. LEXIS 6794, at *9 (S.D.N.Y. Jan. 30, 2007), to support their narrow definition of confidential research.  However, not only is Geltzer non binding on this Court, it is also a case that bears no resemblance to the instant matter since it dealt with a Plaintiff's argument that a settlement amount qualified as confidential commercial information, rather than confidential research.

The narrow interpretation put forth by Appellants is simply unsupported by the language of the statute, which provides protection "with respect to a trade secret or confidential research, development, or commercial information."  11 U.S.C. § 107(b)(1).  The clear and unambiguous usage of "or" does not equate confidential research with commercial information.  See In re Orion Pictures Corp., 21 F.3d at 28 (finding that the district court properly held that courts interpreting § 107(b) need not require that commercial information be the equivalent of a trade secret before protecting such information).  Accordingly, the Court finds that the bankruptcy court did not abuse its discretion when it determined that the information contained in the Sealed Motions qualified as confidential research under § 107.[12]

---

[11] Ejusdem generis is the idea that, "when general words follow an enumeration of specific terms the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding words."  See Miami Heart Inst. v. Sullivan, 868 F.2d 410, 413 (11th Cir. 1989) (quoting United States v. Chase, 135 U.S. 255, 260 (1890)).

[12] While this Court declines to define confidential research, it finds that research to uncover a fraud conducted by court-appointed fiduciaries and their retained professionals merits protection under the statute if disclosure of the contents of the investigation would impede the fiduciaries' ability to effectively uncover the fraud.

2. <u>The Bankruptcy Court Did Not Abuse Its Discretion When It Concluded That the Sealed Motions are Not Subject to the Common Law Right of Access and there was Good Cause for the Issuance of the Sealed Orders</u>

Appellants argue that the bankruptcy court abused its discretion when it determined that only dispositive motions are entitled to the common law right of access, while ignoring the First Amendment right of access. Opening Br., at 16–19. The Sealed Motions described the Trustees' confidential research to the bankruptcy court so that the bankruptcy court could evaluate the Trustees' request to conduct discovery in a confidential manner. <u>See</u> Order, at 2. The Eleventh Circuit's approach to the right of access "accounts both for the tradition favoring access, as well as the unique function discovery serves in modern proceedings . . . [M]aterial filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right . . . ." <u>See</u> <u>Chicago Tribune Co. v. Bridgestone/Firestone, Inc.</u>, 263 F.3d 1304, 1312 (11th Cir. 2001). The Sealed Motions provided information in conjunction with the Trustees' discovery request. The Sealed Motions were not filed in conjunction with pretrial motions requiring resolution on the merits. Accordingly, the bankruptcy court did not abuse its discretion when it determined that the Sealed Motions were not subject to the common law right of access.

The constitutional right of access standard, where discovery materials are concerned, is identical to that of Rule 26(c) of the Federal Rules of Civil Procedure. <u>See</u> <u>Chicago Tribune Co.</u>, 263 F.3d at 1310 (citing <u>McCarthy v. Barnett Bank</u>, 876 F.2d 89, 91 (11th Cir. 1989)). The party seeking protection must demonstrate good cause. <u>Id.</u> The bankruptcy court determined that the Sealed Motions include work product regarding the progress of the investigation and that unsealing the motions "could compromise the efforts of the Trustee to recover the undisputed hundreds of millions of dollars in losses incurred by Transbrasil's creditors . . . ." Order, at 3. This qualifies as

good cause and satisfies the constitutional right of access standard.[13]  Accordingly, the bankruptcy

court did not abuse its discretion when it determined that the Trustees demonstrated good cause for

the issuance of the Sealed Orders.

   3.  <u>The Bankruptcy Court Did Not Abuse Its Discretion When It Considered the Ruling of
       the Brazilian Court in the Context of the Chapter 15 Case</u>

The bankruptcy court did not abuse its discretion when it extended comity to the seal

ordered in Brazil.  In a Chapter 15 proceeding, "[a] court in the United States shall grant comity or

cooperation to the foreign representative."  <u>See</u> 11 U.S.C. § 1509(b)(3).  11 U.S.C. § 1506 states,

"[n]othing in this chapter prevents the court from refusing to take an action governed by this chapter

if the action would be manifestly contrary to the public policy of the United States."  11 U.S.C. §

1506.  When read together, these statutes "provide that comity shall be granted following the U.S.

recognition of a foreign proceeding under Chapter 15, subject to the caveat that comity shall not be

granted when doing so would contravene fundamental U.S. public policy."  <u>In re Qimonda AG</u>

<u>Bankr. Litig.</u>, 433 B.R. 547, 565 (E.D. Va. 2010)

Relying on § 1506, Appellants argue that the bankruptcy court's decision to grant "comity to

the foreign main proceeding in Brazil is wholly unwarranted and offends fundamental principles of

the U.S. legal system."  Opening Br., at 21.  This Court disagrees.

First, the bankruptcy court properly determined that the information contained in the Sealed

Motions was "confidential research" under § 107(b), and that the Trustees demonstrated good cause

in the Sealed Motions for the issuance of the Sealed Orders.  The bankruptcy court then noted that

the investigation in Brazil has been conducted under seal because the appellate court with

jurisdiction in Brazil "was concerned that 'the current communications' speed allows financial

---

[13] The Court recognizes the difficulty of Appellants' situation, in that they are attempting to argue
that there is not good cause for the seal, without access to the Sealed Motions that provide the basis
for the seal; however, the Court finds that the bankruptcy court did not abuse its discretion when it
determined that there was good cause for the issuance of the Sealed Orders.

operations in a matter of minutes, and, as such, [the Trustee's] actuation, <u>here or abroad</u>, must not

be disturbed by the obvious possibility of frustrating his initiative to localize [locate] the assets.'"

Order, at 4 (quoting Bankr. ECF No. 62, Ex. GS2).  The bankruptcy court thus concluded that the

continuation of the seal "as permitted under section 107(b) is consistent with the purposes of

Chapter 15."  <u>Id.</u>  In other words, comity was just one factor that the bankruptcy court cited in

support of its decision to seal the record.

      Second, this situation does not offend fundamental principles of the United States' legal

system.  The Trustees are filing information under seal because they are concerned that if they file

the information publicly the assets that they are working to locate will disappear.  Both the

Brazilian Court and the bankruptcy court saw the logic and necessity for this information to be

sealed.  This Court similarly sees the logic behind the seal, and finds that the bankruptcy court did

not abuse its discretion when it referenced comity in support of its decision to grant the Trustees'

Motion to Seal.

      4.  <u>The Bankruptcy Court Did Not Abuse its Discretion in Granting the Sealed Motions or in Leaving the Seal in Place With Regard to Documents Filed Under Seal Prior to the Entry of the April 24 Order</u>

      Appellants argue that the bankruptcy court abused its discretion when it granted Trustees'

Sealed Motions without making findings of fact that establish good cause and allow for meaningful

appellate review.  Opening Br., at 11–14.  The Order states that:

> The Trustees submitted through unrebutted sworn declaration that the former principals of the company have not cooperated with the Trustees' efforts to identify and liquidate assets of the estate, and have not complied with Brazilian bankruptcy law requirements that they turn over the Debtor's financial records to the Trustees. Though not dispositive, this conduct creates the impression that the former principals of the Debtor and their affiliates are working against the investigatory efforts of the Trustees, and unsealing information about those efforts could be used to further impede the investigation.

Order, at 3 (internal citations omitted).  The Court realizes that Appellants and Transbrasil are not

one and the same.  However, based on Appellants' principal's relationship with Transbrasil, the

13

Trustees' research related to Appellants, and the bankruptcy court's concern that unsealing the Trustees' research may lead assets to disappear, the Court finds that the seal was supported by good cause.  Furthermore, the bankruptcy court's Order, while clearly constrained by the seal, provides for meaningful appellate review.

Appellants also argue the bankruptcy court abused its discretion when it left the seal in place over documents that were already filed under seal, while ordering that documents going forward will not be subject to an automatic seal.  Opening Br., at 22.  This Court disagrees.  The cat is out of the bag.  Transbrasil and Appellants are on notice that the Trustees' investigation is underway. Thus, one of the reasons for the seal, which was to conduct the investigation in a way that would not tip off its targets, has been impacted.  The bankruptcy court modified its Order accordingly. Unsealing the Sealed Motions now would discourage candor to the Court and could negatively impact any possibility that remains of finding any assets.  See Order, at 3.

Finally, to be clear, the bankruptcy court did not enter a "blanket seal" for an indefinite amount of time in this case, as Appellants claim in their Brief.  Opening Br., at 13.  Instead, the bankruptcy court has been continually monitoring this case and renewing the seal every 180 days, upon the Trustees' written motion demonstrating a need for the seal to remain in place.

For the foregoing reasons, the Bankruptcy Court's Order regarding Appellants' Motion to Unseal will be affirmed.

**B. Motion to Quash Subpoena Duces Tecum for Rule 2004 Examination**

The Court now turns to the second issue on appeal, which is whether the bankruptcy court abused its discretion when it denied in part and deferred in part Appellants' Motion to Quash. The Court need not reach this issue because this portion of the Order is interlocutory.

The bankruptcy court's Order directed Redwood to produce the documents responsive to the Subpoena to Appellants' counsel within fourteen days.  Order, at 5–7.[14]  Appellants' counsel was then ordered to identify the documents or portions thereof that they consider sensitive financial information ("Alleged Sensitive Documents").  Id. at 7.  Within fourteen days of receipt, the bankruptcy court ordered Appellants' counsel to "produce or allow Redwood Capital to produce those documents not identified as Alleged Sensitive Documents to the Trustees" and to "produce or allow Redwood Capital to produce copies of the Alleged Sensitive Documents to the Trustees' U.S. counsel . . . for review by the Court, court personnel, the Trustees, and the Trustees' retained professionals in a manner that allows copies of such Alleged Sensitive Documents to be reviewed on a secure website . . . ."  Id.  The bankruptcy court further ordered that the Alleged Sensitive Documents could not be used or filed outside of the District without an order from the court or an agreement between the parties, and that the parties could bring any future dispute regarding production before the court.  Id.  Finally, the bankruptcy court retained its authority to order production of any of the Alleged Sensitive Documents, to remove any of the Alleged Sensitive Documents from the secure website, or to modify of the terms of the Order.  Id. at 7–8.

Appellees argue that this portion of the order should be dismissed because: (1) the Order is interlocutory; (2) discretionary review of the Order is not warranted; and (3) further delay in this case will harm the administration of the Transbrasil bankruptcy estate.  Mot. for Partial Dismissal, at 5.  Appellants, on the other hand, argue that this portion of the Order is final because it mandates that all of Appellants' financial information in Redwood's possession must be immediately turned over to the Trustees.  Resp. in Opp'n to Mot. for Partial Dismissal ("Resp."), at 3–4.  While the Order contemplates possible subsequent action by the parties and/or the Court, Appellants argue that any action would take place after Appellants' financial information has been provided to the

---

[14] The bankruptcy case was stayed pending appeal, so no action has been taken on the Order.  See (Bankr. ECF No. 115).

Trustees.  Id. at 3.  Appellants further argue that the Eleventh Circuit recognizes several exceptions

to the general rule that discovery rulings are not routinely appealable, and that the Perlman rule and

the collateral order doctrine apply here.  Id. at 7–11.[15]  Finally, if the Court determines that the

Order is not final, the Appellants ask the Court to exercise its discretionary review over the

interlocutory appeal.  Id. at 11–12.

Section 158(a) extends appellate jurisdiction to district courts to hear appeals from a

bankruptcy court's final orders and, with leave of the court, interlocutory orders.  28 U.S.C. §

158(a).  A final decision is generally "one which ends the litigation on the merits and leaves nothing

for the court to do but execute the judgment."  In re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985)

(quoting Caitlin v. United States, 324 U.S. 229, 233 (1945)).  In bankruptcy proceedings, it is

generally the particular adversary proceeding or controversy that must have been finally resolved,

rather than the entire bankruptcy litigation.  Id.  "Although courts take a more liberal view of what

constitutes a separate dispute for purposes of appeal in bankruptcy cases, the separate dispute being

assessed must have been finally resolved and leave nothing more for the bankruptcy court to do."

Id. (internal quotations and citations omitted).

"As a general proposition most orders granting or denying discovery are not final orders . . .

and therefore are not immediately appealable."  In re Int'l Horizons, Inc., 689 F.2d 996, 1000–1001

(11th Cir. 1982) (quoting Rouse Constr. Int'l, Inc. v. Rouse Constr. Corp., 680 F.2d 743, 745 (11th

Cir. 1982).  "Ordinarily, a litigant seeking to overturn a discovery order has (only) two choices.

Either he can comply with the order and challenge it at the conclusion of the case or he can refuse to

---

[15] Other exceptions to the final judgment rule are certification by statute, petition for a writ of
mandamus, and contempt citation.  See Doe No. 1 v. United States, 749 F.3d 999, 1004 (11th Cir.
2014).  Since Appellants have not alleged that either certification by statute or petition for a writ of
mandamus apply here, the Court will not address these exceptions.  The Court finds that review
upon a contempt citation is still available to Appellants; however, the case is not far enough along
for this exception to be applicable, i.e., no contempt citation has been issued.  This exception will be
discussed infra at pages 20-21.

comply with the order and contest its validity if subsequently cited for contempt for his refusal to obey." Id. (quoting Rouse Constr. Int'l, Inc., 680 F.2d 743, 745 (11th Cir. 1982)).

Issues concerning the scope of discovery under Rule 2004 are inherently interlocutory. See In re Del Castillo, No. 08-mc-20020-CMA, 2008 WL 9496398, at *6 (S.D. Fla. Feb. 8, 2008) (agreeing with the Trustees' characterization that issues concerning the scope of discovery under Rule 2004 are inherently interlocutory, present no controlling issues of law, and are left to the sound discretion of the court that is fully familiar with the proceeding—the bankruptcy court); see also Vance v. Lester, No. 98-1470, 1998 WL 783728, at *1 (7th Cir. Nov. 2, 1998) (stating that the majority of courts have found that orders granting or denying Rule 2004 examinations are interlocutory). "It is only when a dispute has been narrowed and there is no indication that further action by the bankruptcy court will be forthcoming that an order concerning a Rule 2004 examination is considered final." See Aetna Cas. & Sur. Co. v. Glinka, 154 B.R. 862, 866 (D. Vt. 1993) (internal quotations omitted).

Upon review, the Court finds that the portion of the Order deferring in part and denying in part Appellants' Motion to Quash Subpoena is not a final order subject to immediate appellate review. Furthermore, the non-final order is not subject to immediate review pursuant to the Perlman rule or the collateral order doctrine. Finally, the Court finds that leave to appeal the interlocutory order should be denied. Accordingly, the appeal of the portion of the order regarding Appellants' Motion to Quash will be dismissed.

1. The Portion of the Order Related to Appellants' Motion to Quash is Not Final

Appellants argue that the portion of the Order regarding Appellants' Motion to Quash is final because it orders Redwood to comply with the Subpoena and produce the requested documents. Resp., at 4. Once the documents have been produced, the court cannot go back and undo the production of the documents. Id. at 4, 10. Thus, Appellants argue that the Order is final as

to this point.  Appellants try to square this case with the court's statement in Aetna Casualty &
Surety Co. v. Glinka, 154 B.R. 862, 866 (D. Vt. 1993), that an order concerning a Rule 2004
examination is considered final "when a dispute has been narrowed and there is no indication that
further action by the bankruptcy court will be forthcoming."[16]

There are two problems with Appellants' argument that the Order on the Motion to Quash is
final.  The first problem is that if the Court were to follow Appellants' reasoning—that the Order is
final because it orders Redwood to produce the documents requested in the Subpoena—then parties
could appeal almost any adverse order on a motion to quash.  This would cut against our court-
system's "healthy respect for the virtues of the final-judgment rule" and permit piecemeal,
prejudgment appeals, undermining judicial administration.  See Mohawk Indus., Inc. v. Carpenter,
558 U.S. 100, 106 (2009).

The second problem is that, as Appellants state in their Response, "[t]he Order contemplates
subsequent possible actions by the parties and/or the Court . . . ."  Resp., at 3.  While the action may
take place after the requested documents have been produced by Redwood to Appellants, the matter
of discovery has not been finally resolved.  In fact, the bankruptcy court explicitly "denied in part
and deferred in part" Appellants' Motion to Quash.  Discovery is not complete simply because
Redwood is ordered to comply with the Subpoena.  Thus, the Court finds that the Order is not final.

---

[16] Notably, in Aetna Casualty, the court determined that the bankruptcy court's order denying a
motion to quash a subpoena and directing production of documents for the purposes of an
examination pursuant to Bankruptcy Rule 2004, was not a final order.  154 B.R. at 864, 868.  The
court in Aetna Casualty found that the assertion that there was nothing left for the bankruptcy court
to do with regard to the subpoenas following the entry of the order was inaccurate.  Id. at 868.  This
was evidenced by the fact that, after the bankruptcy court entered the order denying the motion to
quash, the parties returned to the bankruptcy court to further clarify the scope of the subpoenas
contemplated by the order.  Furthermore, the court had no way of conclusively determining whether
the parties would refuse to comply with the subpoenas, nor could the court predict whether the
bankruptcy court would issue a contempt order in the face of such refusal.  Id.  Thus, the court
determined that the order denying the motion to quash was indeed interlocutory.  Id.

2. <u>Appellants Are Not Entitled to Immediate Appellate Review of Their Non-Final Order Based on the Perlman Rule or the Collateral Order Doctrine</u>

Appellants attempt to fit their case under the <u>Perlman</u> rule or the collateral order doctrine, which are exceptions to the final judgment rule and allow immediate appeal of the interlocutory orders, is unavailing.

Under <u>Perlman v. United States</u>, 247 U.S. 7 (1918), a discovery order directed at a disinterested third-party is treated as immediately appealable because the third-party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance. <u>See Doe No. 1 v. United States</u>, 749 F.3d 999, 1004 (11th Cir. 2014). Appellants argue that <u>Perlman</u> is applicable because the Subpoena seeks the Appellants' confidential financial information from Redwood, a third-party who lacks a sufficient stake in the proceedings to risk contempt by refusing compliance. Resp., at 5. However, the <u>Perlman</u> rule only permits an order denying a motion to quash to be considered final as to the injured third-party when that party is otherwise "powerless to prevent the revelation." <u>See Doe No. 1</u>, 749 F.3d at 1004. As the Court will discuss more <u>infra</u> at 20, even if Redwood does comply with the Subpoena, Redwood is ordered to produce the responsive documents to Appellants. Thus, Appellants retain the final say as to whether the requested documents will be produced to the Trustees. Appellants are not powerless here. Accordingly, <u>Perlman</u> is not applicable.

Under the collateral order doctrine, an order is immediately appealable if it: (1) conclusively determines the disputed question; (2) resolves an important issue completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from a final judgment. <u>See Cohen v. Beneficial Indus. Loan Corp.</u>, 337 U.S. 541 (1949); <u>see also Mohawk Indus., Inc. v. Carpenter</u>, 558 U.S. 100, 105 (2009). Appellants argue that the Order meets all three requirements because the Order conclusively resolves the discovery dispute with respect to Appellants and Redwood, the discovery dispute is separate from the Chapter 15 proceeding, and the Order will be

19

unreviewable following final resolution of the Chapter 15 proceeding because Appellants are not parties to the proceeding and when their financial information is produced their right to privacy will be irreparably harmed.[17]  See Resp., at 10.

The Court finds that the Order does not meet the requirements to appeal under the collateral order doctrine.  Application of the collateral order doctrine requires a finding that the order is effectively unreviewable.  See Aetna Casualty, 154 B.R. at 868 n. 8.  Appellants argue that "[t]his stage is the only one at which the Appellants may appeal the Order on the Motion to Quash," because Appellants are not parties to the Chapter 15 proceeding.  Resp., at 8.  However, this statement is not true.  The Order directs Redwood to produce the responsive documents to Appellants who are then directed "to produce or allow Redwood Capital to produce" the documents after they have been reviewed.  Order, at 7 (emphasis added).  The Order contemplates that Appellants will ultimately control whether the responsive documents are produced to Trustees.

One long-recognized option for review that is still available to Appellants is the option to defy the bankruptcy court's discovery order and potentially incur a contempt citation.  See Aetna Casualty, 154 B.R. at 868 n. 8 (finding that the issues raised on appeal were reviewable in an appeal from a contempt sanction and so the order was not unreviewable and the collateral order doctrine did not apply).  "The virtue of a contempt adjudication before allowing an appeal is that it affords the parties a second look before determining whether to pursue or resist discovery."  Id. at 868 (internal quotation omitted).  Appellants can still obtain review without having to reveal their financial information.  See Mohawk, 558 U.S. at 111.  Thus, Appellants have not shown that the

---

[17] The Court is not persuaded by Appellants' attempt to vilify the Trustees.  The Trustees, as court-appointed fiduciaries, are simply doing their job.  Appellants' fear that the Trustees are going to take screen shots of their Alleged Sensitive Documents and abscond from the District to inappropriately use their information is completely unsubstantiated.

Order cannot be reviewed or that their interests cannot be protected in the absence of immediate review.

Furthermore, there are too many uncertainties for the collateral order doctrine to be applicable. See In re De Castillo, 2008 WL 9496398, at *5 (finding that there were too many uncertainties for the collateral order doctrine to be satisfied because it was unclear whether Countrywide would comply with the subpoena, if Countrywide failed to comply with the subpoena, it was unclear whether the Trustee would move to compel compliance, and it was unclear whether the bankruptcy court would hold Countrywide in contempt for their failure to comply). The Court does not know what will transpire in this case at this juncture. The Court does not know whether the bankruptcy court will modify the terms of the Subpoena. The Court does not know whether Redwood will comply with the Subpoena.[18] If Redwood complies with the Subpoena, the Court does not know whether Appellants will produce the documents to the Trustees. If Appellants don't produce the documents to the Trustees, the Court does not know whether the bankruptcy court will hold Appellants in contempt of court. Simply put, it is too early for the District Court to step in. See Aetna Casualty, 154 B.R. at 868 (finding that an order denying a motion to quash was not a final order because there was more for the bankruptcy court to do). Having failed to satisfy the recognized exceptions to the final judgment rule, Appellants have not demonstrated that immediate appellate review is warranted.

3.    The Court Declines to Grant Leave to Appeal

Under section 1292(b), the court may allow a party to take an interlocutory appeal of an order where (1) the order involves a controlling question of law; (2) there is a substantial ground for difference of opinion regarding the court's resolution of that question of law; and (3) an immediate

---

[18] Appellants state that it is their "expectation" that Redwood will comply with the Order and produce the responsive documents. Resp., at 9 n. 1.

appeal of the order may materially advance the ultimate termination of the litigation.  Section

1292(b) appeals "were intended, and should be reserved, for situations in which the court of appeals

can rule on a pure, controlling question of law without having to delve beyond the surface of the

record in order to determine the facts."  <u>McFarlin v. Conseco Servs., LLC</u>, 381 F.3d 1251, 1259

(11th Cir. 2004).  The Court finds no reason to exercise its discretion to entertain an interlocutory

appeal in this matter. [19]  Accordingly, Appellees' Motion for Partial Dismissal of Appeal will be

granted.

---

[19] The Court is aware of, and has considered, the possibility that this case may return on the
same issues raised in Appellants' Opening Brief.  However, the jurisdictional questions raised
in Appellees' Motion for Partial Dismissal trumps Appellants judicial economy argument.

## III.    CONCLUSION

Accordingly, for the foregoing reasons, the bankruptcy court's April 24, 2014 Order on Motions to Unseal Discovery Proceeding and Motion to Quash Subpoena Duces Tecum for Rule 2004 Examination (Bankr. No. 11-194854-AJC, ECF No. 95) is AFFIRMED IN PART and DISMISSED IN PART.   The portion of the Appeal regarding the Motion to Unseal Discovery Proceeding is AFFIRMED.   The portion of the Appeal related to the Motion to Quash Subpoena Duces Tecum for Rule 2004 Examination is DISMISSED as interlocutory.

It is further ORDERED AND ADJUDGED that Appellees' Motion for Partial Dismissal of Appeal (ECF No. 6) is GRANTED.

It is further ORDERED AND ADJUDGED that Appellants' Request for Oral Argument (ECF Nos. 12, 13) is DENIED.

The Clerk of Court is instructed to CLOSE this case.   All pending motions not otherwise ruled upon are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 30th   day of March, 2015.

_____
K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

cc:    All counsel of record