UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:  Case No. 11-19484-AJC

Chapter 15

TRANSBRASIL S.A. LINHAS AÉREAS,

     Debtor in Foreign Proceeding.
_____/

**MOTION FOR SANCTIONS PURSUANT TO**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE 7026**

Transbrasil S.A. Linhas Aéreas ("Transbrasil"), by and through its majority shareholder, the Estate of Omar Fontana ("Fontana Estate"), represented by the trustee of the Fontana Estate, Denilda Fontana, by and through undersigned counsel, and pursuant to Rule 26 of the Federal Rules of Civil Procedure made applicable to this proceeding pursuant to Rule 7026 of the Federal Rules of Bankruptcy Procedure and Local Rule 7026-1, hereby files this *Motion for Sanctions Pursuant to Federal Rules of Bankruptcy Procedure 7026* (the "Motion"). In support, Transbrasil states as follows:

**INITIAL STATEMENT**

This Motion arises in connection with Trustee Gustavo Henrique Sauer de Arruda Pinto's, as Trustee of Transbrasil S.A. Linhas Aéreas, Request for Production of Documents (the "Discovery Requests") which are currently the subject of *Transbrasil S.A. Aéreas' Motion for Protective Order in response to Trustee Gustavo Henrique Sauer de Arruda Pinto's Request for Production of Documents* (ECF No. 181) (the "Motion for Protective Order"). As set forth below and in the Motion for Protective Order, Transbrasil is not in possession, custody or control of any documents in the United States responsive to any of the Trustee's requests. Moreover, since 2005, Transbrasil has not had possession, custody, or control of any responsive documents,

other than documents which are part of the record in the Transbrasil bankruptcy cases pending in Brazil. To the knowledge of the Fontana Estate, and as is well known to the Co-Trustees, the last known custodian of Transbrasil's records was Infraero Aeroportos, the government controlled entity that took legal custody of Transbrasil's headquarters in the Brasilia Airport in 2002 and its administrative offices in the Congonhas Airport in 2005. These facts have been the subject of extensive discovery proceedings in Brazil, including as recently as May 2015. As it relates to documents in Brazil, the Discovery Request was undertaken in violation of Fed. R. Bankr. P. 7026(g); which requires that a discovery request not be promulgated "for any improper purpose such as to harass, cause unnecessary delay or needlessly increase the cost of litigation" and that it be "neither unreasonable nor unduly burdensome or expensive considering the needs of the case, prior discovery in the case, the amount in controversy and the importance of the issues at stake in the action."

## BACKGROUND

**A.    The Foreign Main Proceeding**

1.    In April 2002, a division of the General Electric Company commenced an involuntary bankruptcy proceeding against Transbrasil in Brazil (the "Foreign Main Proceeding").[1] Transbrasil challenged the involuntary bankruptcy and the complex proceedings have continued for over 13 years.

2.    At or about the time of the bankruptcy filing, Transbrasil ceased operations and Infraero Aeroportos ("Infraero"), the government run corporation that manages and operates airports in Brazil, seized the offices of Transbrasil taking possession of all of its assets, books and records. Attached to the Motion for Protective Order as Exhibits A and B are certified

---

[1] *See* Verified Petition for Recognition of Foreign Main Proceeding at 3, *In re TransBrasil S.A. Linhas Aereas*, No. 11-19484-AJC (Bankr. S.D. Fla. Apr. 7, 2011) (ECF No. 1).

translations of the records Infraero representatives confirmed Infraero possesses as legal custodian of the inventory or assets and records from Transbrasil's headquarters at Brasilia Airport and its administrative offices at Congonhas Airport.

3. The inventory of assets seized by Infraero includes reference to over 500 boxes of documents seized. *See* Exhibit B to the Motion for Protective Order, page 4.

4. By 2004, the Brazilian court appointed Gustavo Henrique Sauer de Arruda Pinto and Alfredo Lutz Kugelmas as Co-Trustees for Transbrasil (the "Co-Trustees").

5. After the Co-Trustees were appointed, the Brazilian Court ordered Infraero to turn over all of the assets, books and records of Transbrasil to the Co-Trustees.

6. Infraero did not comply. Attached to the Motion for Protective Order as Exhibit C is an order from the Sao Paulo State Court reaffirming Infraero's possession and obligations with regard to the Transbrasil assets and records seized from Congonhas Airport.

7. Due to the foregoing, Transbrasil does not have access to the records and is very interested in viewing the records seized by Infraero.

8. As recently as April 22, 2015, the Sao Paolo State Court ordered Infraero and the Co-Trustees to arrange for the collection of the assets and records from the Congonhas Airport with Transbrasil representatives present. A certified translation of the April 22, 2015 Order is attached to the Motion for Protective Order as Exhibit D.[2]

---

[2] Though the April 22, 2015 order indicates that the document collection was to commence on May 25th, the order was stayed at Transbrasil's request. Given the size of the facility and the volume of assets and records to be collected, Transbrasil wished to have more than a single representative present. Upon the Co-Trustees' refusal, Transbrasil appealed. That logistical issue is currently on appeal.

B.    **The Chapter 15**

9. On April 7, 2011, the Co-Trustees commenced this Chapter 15 case by filing the Co-Trustee's Petition for Recognition of Foreign Main Proceeding (the "Petition") under Chapter 15 of the United States Bankruptcy Code (the "Bankruptcy Code") (ECF No. 1).

10. The Petition provided that the Chapter 15 case was necessary "to seek records and other information relating to assets of Transbrasil or its subsidiaries or related companies that are or were transferred through the United States." (ECF No. 1 at ¶ 6). The Petition specifically references a U.S. subsidiary known as Transbrasil Airlines, Inc.

11. On May 11, 2011, the Court recognized the Transbrasil proceeding as a "Foreign Main Proceeding" as defined in § 1502(4) of the Bankruptcy Code (ECF No. 9).

12. At that time, the Court may not have been aware that the U.S. subsidiary had been administratively dissolved nine years earlier, in 2002.

13. The Petition also alleged that Delta Airlines had possession of two aircraft engines that were the property of Transbrasil in the United States. Yet, no such engines existed. Three years later, the only other connection openly alleged between the U.S. and Transbrasil came in the Co-Trustees' motion to sell $2,000 of alleged Transbrasil aircraft parts located in a Kansas warehouse (ECF No. 83), a location that Transbrasil did not operate. The Order authorizing the sale of these parts specifically did not determine that the parts were Transbrasil's property. (ECF No. 146).

14. Accordingly, on December 30, 2013, Transbrasil acting through the Fontana Estate filed a *Motion to Dismiss Case and Unseal Discovery Proceedings* (the "Dismissal Motion") (ECF No. 44), which is premised on the fact that Transbrasil has no assets in the United States.

15. On January 29, 2014, the Court conducted a preliminary hearing on the Dismissal Motion. At the hearing, the Court determined that the Court would likely require evidence to determine the Dismissal Motion.

C. **The Discovery Request**

16. More than a year later, the Co-Trustees served Transbrasil with the Discovery Request pursuant to Rule 7034 and 9014 of the Federal Rules of Bankruptcy Procedure. A true and correct copy of the Discovery Request is attached as Exhibit E to the Motion for Protective Order.

17. The Discovery Request is extraordinarily broad, seeking documents beyond the scope of this Chapter 15 case and well beyond the scope of the Dismissal Motion which is the sole contested matter before this Court. Specifically, the Discovery Request seeks documents that date back seventeen years to 1998, well before the commencement of the involuntary case in Brazil thirteen years ago. It seeks documents outside the United States, and most importantly it seeks documents which are already the subject of the proceedings in Brazil.

18. Transbrasil has no responsive documents in its possession in the United States. The Co-Trustees know that and they know the Transbrasil records are exclusively within Infraero's possession and control.

**LEGAL ANALYSIS AND CITATION TO AUTHORITIES**

19. Pursuant to Federal Rule of Bankruptcy Procedure 7026, every discovery request must be signed by at least one attorney of record and by signing, an attorney or party "certifies that to the best of the person's knowledge, information and belief formed after a reasonable inquiry . . . with respective to a discovery request . . . it is not interposed for any improper purpose such as to harass, cause unnecessary delay or needlessly increase the cost of litigation; and neither unreasonable nor unduly burdensome or expensive considering the needs of the case,

prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action. Fed. R. Bankr. P. 26(g).

20. The Court "must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both" if it finds that "a certification violates this rule without substantial justification." Fed. R. Bankr. R. 26(g).

21. For the reasons set forth below, Transbrasil requests that the Court enter an order issuing sanctions against the Co-Trustees and their counsel.

A. **The Co-Trustees Undertook Discovery for an Improper Purpose.**

22. An ancillary petition in the United States creates neither a new estate in the United States nor a full U.S. bankruptcy proceeding with all of the procedural and substantive provisions applicable to domestic bankruptcies. *In re Board of Directors of Hopewell Intern. Ins., Ltd.*, 258 B.R. 580 (Bankr. S.D.N.Y. 2001) (citing *In re Koreag Controle et Revision S.A.*, 961 F.2d 341, 357 (2d Cir. 1992). Ancillary cases in the United States are designed to aid a foreign proceeding for the administration there. *Id.* (citing *In re Goerg*, 844 F.2d 1562, 1567-68 (11th Cir. 1988)).

23. While some bankruptcy courts have allowed foreign representatives to conduct discovery to aid them in administering assets in the United States, bankruptcy courts generally do not permit foreign representatives to use the ancillary proceeding for discovery relating to proceedings outside of the United States. *See e.g. Id.; In re Hughs*, 281 B.R. 224, 228 (Bankr. S.D.N.Y. 2002) (ancillary proceedings were intended to provide Untied States courts with broad authority and flexibility to enable foreign representatives to administer assets in the United States).

24. Here, the Discovery Requests literally seek "any and all" documents related to Transbrasil going back to 1998 located anywhere in the world, including (where they were already sought) Brazil. This discovery is plainly not aimed at aiding the Co-Trustees in administering assets in the United States.

25. The information and documents requested are far beyond the purpose and intent of any ancillary proceeding in the United States.

26. The Co-Trustees are well aware of Transbrasil's position regarding the sole contested matter in this case. Specifically, Transbrasil has asserted that it had at the time of commencement of this case, and has at this time, no assets in the U.S. Thus, even if the scope of the discovery was limited to the United States, the Co-Trustees know that the responses to the Discovery Requests will be "none." Transbrasil should not be forced to respond to these requests, because they are plainly designed for the purpose of harassing and burdening Transbrasil, and they are not reasonably calculated to lead to the discovery of admissible evidence in this case

**B.    The Discovery Request is Designed to Burden and Harass Transbrasil.**

27. Discovery may not be used for improper purposes of harassment and being overly burdensome. *See In re Olympia Holding Corp.*, 189 B.R. 846 (Bankr. M.D. 1995) (trustee was sanctioned under then applicable Rule 9011 for issuing improper harassing discovery).

28. The spirit of discovery rules are violated when discovery is used as a tactical weapon rather than to explore a party's claims and facts connected therewith. *In re Weinberg*, 163 B.R. 681, 684 (Bankr. E.D.N.Y. 1994) (sanctions imposed for using discovery for improper purpose); *In re Rimsat, Ltd.*, 229 B.R. 914, 918 (Bankr. N.D. Ind. 1998)(same).

29. The scope of the Discovery Request, on its face, suggests it was designed to be overly burdensome and harassing.

30. First, the Discovery Request seeks from Transbrasil, every single document, dating back seventeen years, that relates in any way to a Brazilian commercial airline that has been in an involuntary bankruptcy for the last thirteen years.

31. Second, the Co-Trustees are well aware that the Discovery Request goes beyond the scope of any contested matter pending before this Court and this ancillary proceeding.

32. Third, any responsive production would not take place in the United States. Indeed, such production would likely only be made available in Brazil, which begs the question: why would the Co-Trustees' seek these documents in the United States?

33. Fourth, the Discovery Requests are not narrowly tailored to lead to the discovery of admissible evidence. If they were, the Co-Trustees could have easily excluded from the request all privileged communications. Instead, with the goal of making their requests that much more burdensome and harassing, the Co-Trustees require the production of all privileged and non-privileged documents as well.

34. Finally, all of the documents relating to the operations of Transbrasil are already the subject of document requests and court orders in the Foreign Main Proceeding. *See* Exhibit A to the Motion for Protective Order.

35. Transbrasil believes that the Co-Trustees have served this discovery in the United States for the improper purpose of harassing Transbrasil and the Fontana Estate, creating burdensome discovery proceedings in the United States, and to circumvent the discovery orders and procedures of the Foreign Main Proceeding.

WHEREFORE, Transbrasil requests the entry of an Order:

1. Granting this Motion;

2. Striking the discovery requests;

3. Imposing sanctions on Co-Trustees and their counsel in an amount at least as much as the attorneys' fees which Transbrasil incurred by the violation; and

4. Granting such other and further relief that is just and proper.

July 15, 2015

                Respectfully submitted,

                BAST AMRON LLP
*Local Counsel to Transbrasil S.A. Linhas Aereas*
SunTrust International Center
One Southeast Third Ave., Suite 1400
Miami, Florida 33131
Telephone: 305.379.7904
Facsimile: 305.379.7905
E-mail: jbast@bastamron.com
E-mail: medelboim@bastamron.com

By: */s/ Jeffrey P. Bast*
     Jeffrey P. Bast, Esq. (FBN 996343)
     Morgan B. Edelboim, Esq. (FBN 040955)

And

Frank J. Schuchat, Esq.
*Counsel to Transbrasil S.A. Linhas Aereas*
Schuchat International Law Firm
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 305-9897
Direct Line: (303)523-3150
Email: frank@schuchatlaw.com

By: */s/ Frank J. Schuchat*
     Frank J. Schuchat, Esq. (CBN 27857)
     *Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served electronically via the Court's CM/ECF system where available and/or U.S. Mail as indicated upon the parties listed below on this 15th day of July 2015.

By: /s/ *Jeffrey P. Bast*
Jeffrey P. Bast, Esq.

**SERVICE LIST**

**VIA CM-ECF:**

- **Rodrigo S Da Silva**    rdasilva@astidavis.com, aguilax18@hotmail.com
- **Edward H. Davis**    edavis@astidavis.com, tcrockett@astidavis.com
- **Brian S Dervishi**    bdervishi@wdpalaw.com, service@wdpalaw.com
- **Gregory S Grossman**    ggrossman@astidavis.com, ngonzalez@astidavis.com
- **Nyana A Miller**    nmiller@astidavis.com, ocruz@astidavis.com
- **Adrian Nunez**    anunez@astidavis.com, gonzalez@astidavis.com
- **Office of the US Trustee**    USTPRegion21.MM.ECF@usdoj.gov
- **Peter A Tappert**    ptappert@wdpalaw.com, service@wdpalaw.com

**VIA E-MAIL**

- Steven C. Bachar    steve.bachar@moyewhite.com
- Timothy M. Swanson, Esq.    tim.swanson@moyewhite.com